Weight, J.
 

 The questions in the case are, 1st. Was there a sufficient offer to perform on the part of the plaintiff, at the time and place designated in the contract; and 2d. Were the damages for non-performance liquidated and fixed by the contract.
 

 1. The execution and delivery of the deed of the defendant’s land and the payment therefor by the plaintiff, were to be simultaneous acts. Such payment was to be made in cash, cash securities and real estate. On the day appointed for the performance of the contract, the plaintiff tendered $4,000 in cash: the assignments of the bonds and mortgages mentioned in the contract: two indorsed promissory notes of $500 each; and a deed of a house and lot in Byron. The contract provided that the defendant should take, in part payment for his land, an assignment of a mortgage upon land known as the Stewart farm, executed in May, 1854, by Joel Bouse and Lewis Merwin and wives, for the sum of $3,187 and interest; and, also, an assignment of a mortgage on land in the town of Pembroke, executed on 5th July, 1854, by Charles L. Branch to Clement for $1,000 and interest. The original», mortgage of Branch was not attached to the assignment; for the reason that it had been left for record in the clerk’s office of the county,
 
 *255
 
 and could not afterwards be found. The mortgage was however recorded, and the assignment tendered referred in terms to the record. The other assignment tendered’ was of a bond and mortgage alike in all respects to that referred to in the contract, except that the mortgage was not signed by the wives’ -of Rouse and Merwin. It is not insisted that there was any failure in the offer to perform on the part of the plaintiff, unless in respect to these assignments. Nor do I think there was any "here. He offered substantially to do and perform all that the contract required of him, and sufficient to put the defendant in default.
 

 With respect to the Branch mortgage, all that the plaintiff covenanted to do was to transfer it by assignment to the defendant. He tendered a proper assignment, with the bond attached. The original mortgage, it is true, was not present with the assignment, it having been sent to the clerk’s office to be recorded, and was lost. It was recorded on the 21st September, 1854. An assignment of the bond and mortgage, the bond being attached and the mortgage recorded, was as effectual for all purposes as if accompanied with the mortgage.
 

 The mortgage assigned on the Stewart farm was undoubtedly the one referred to and described in the contract, though not purporting to be signed by the wives of Rouse and Merwin. On the day of the tender the defendant made no objection.to this assignment; showing that he considered the tender, so far as this mortgage is in question, a compliance with the intention of the contract. It was a purchase money mortgage, and so expressed in the instrument. It was upon the identical farm mentioned in the contract, of the same date, and executed to secure the exact sum ($3,137) therein named. If the parties to this action were reversed, and the same facts proved, there could be no recovery against the plaintiff, on the ground that there was a breach of the contract in failing to assign a mortgage on the Stewart farm, executed not only by Rouse and Merwin, but by their respective wives. The offer to perform in this respect was according to the intent of the contract.
 

 
 *256
 
 Upon the whole, therefore, there was nothing in the conduct or acts of the plaintiff to justify or excuse the refusal of the defendant to perform his part of the contract to grant and convey, by a good and sufficient deed, the premises and real estate described therein. The pretext set up in the answer, that the defendant was induced to execute the contract upon the fraudulent representations of the plaintiff in respect to the validity and nature of the liens of the mortgages agreed to be assigned and taken in payment, was entirely unproved." In short, the evidence showed a total failure to perform on his part, without any legal excuse or justification.
 

 2. The important, and, in fact, the only question of any real difficulty in the cáse, arises in respect to the damages. The concluding clause of the agreement is as follows: “In case either of the said parties shall fail to keep, perform and fulfill the covenants and agreements herein contained, on his part to be kept, performed and fulfilled, the party so failing to perform shall pay to the other party the sum of two thousand dollars, which said sum is hereby mutually agreed by and between said parties to be the ascertained and liquidated damages for such non-performance.” It is competent for the parties to a contract for the purchase or sale of teal estate, to liquidate and settle by agreement between themselves, the amount of damages to be paid Upon a breach of the contract, instead of leaving such amount to be ascertained by a court or jury. When, sayS RuGGLES, J., in
 
 Cotheal
 
 v.
 
 Talmage
 
 (5 Seld., 551), the damages resulting from the breach are uncertain in amount, as they are in all cases other than where the contract is to pay money, the parties have the right to say how much shall be paid by way of compensation to the party" injured; and when they have settled that compensation, neithei a court of law nor a court of equity will diminish its amount unless it be so grossly disproportionate to the actual injury that a man would start at the bare mention of it. (2 Bos. & Pul., 351.) So, also, I think where the language employed in that part of the instrument ascertaining the amount of the damages is clear ánd plainly indicative of an intention to fix a definite sum to be
 
 *257
 
 paid by the party failing to perform, and negatives all inference of an intent to name the sum as a penalty, the courts are not authorized, by construction, to make a new contract for the parties, or unmake the one made by them, and hold, from the nature and circumstances of the case, that the parties intended something wholly different from what they have expressed. When the parties to a contract, in which the damages to be ascertained, growing out of a breach, are uncertain in amount, mutually agree that a certain sum shall be the damages in case of a failure to perform, and in language plainly expressive of such agreement, I know of no sound principle or rule applicable to the construction of contracts, that will enable a court of law to say that they intended something else. Where the sum fixed is greatly disproportionate to the presumed actual damage, probably a court of equity may relieve; but a court of law has no right to erroneously construe the intention of parties, when clearly expressed, in the endeavor to make better contracts for them than they have made for themselves. In these, as in all other cases, the courts are bound to ascertain and carry into effect the true intent of the parties. I am not disposed to deny that a cause may arise in which it is doubtful from the language employed in the instrument, whether the parties meant to agree upon the measure of compensation to the injured party in case of a breach. In such cases there would be room for construction; but certainly none where the meaning of the parties was evident and unmistakable. When they declare, in distinct and unequivocal terms, that they have settled and ascertained the damages to be $500, or any other sum to be paid by either failing to perform, it seems absurd for a court to tell them that it has looked into the contract and reached the conclusion that no such thing was - intended; but that the intention was to name the sum as a penalty to cover any damages that might be proved to have been sustained by a breach' of the agreement. Still, certain rules have crept into the law that are supposed to control the construction of contracts of this character, until in the view of some it has become difficult, if not impossible, to support an agreement for liquidated damages
 
 *258
 
 in cases where the amount ascertained by the parties seems disproportionate to the conjectured actual damage.
 

 ' The present was a contract for the sale and transfer of real estate; where the damages resulting from a breach would be uncertain in their amount; and it is not to be supposed that the parties were not at least as well able to estimate the value of the bargain, and appreciate the consequences of failing to obtain the land on the one hand or the stipulated consideration on the other, as either judges or juries. The damages for non-performance were liquidated and fixed, if the language used by the parties to a contract can, in any case, fix the amount. It is precise and explicit, leaving nothing for construction or intendment. The parties declare, in language not capable of being misunderstood or misinterpreted, that they have ascertained and liquidated the damages at two thousand dollars, to be paid by the party failing to perform the agreement to the injured party. If they could do this, that is the sum to be treated as the measure of damages. That they could do it as respected a contract like the present, is clear from numerous adjudications and upon principle.
 
 (Hasbrouck
 
 v.
 
 Tappen,
 
 15 John. R., 200;
 
 Knapp
 
 v.
 
 Maltby,
 
 13 Wend., 587;
 
 Holmes
 
 v.
 
 Holmes,
 
 12 Barb., 137;
 
 Esmond
 
 v.
 
 Van Benschoten,
 
 12 Id., 366;
 
 Mundy
 
 v.
 
 Culver,
 
 18 Barb., 336.) In
 
 Kemble
 
 v.
 
 Farren
 
 (6 Bing., 141) a case often cited on the question whether the sum named is to be treated as liquidated damages or as a penalty, Chief Justice Turo ALL said, that if the clause fixing- the sum for liquidated damages “ had been limited to breaches which were of an uncertain nature and amount, we should have thought it would have the effect of ascertaining the damages upon any such breach;” for, he observed, we see nothing illégal or unreasonable in the parties, by their mutual agreement, settling the amount of damages uncertain in their nature at any sum upon which they may agree.” Damages resulting from the breach of any contract, except for the payment of money, when the law liquidates and fixes them, are uncertain in their nature and amount; and whether they may be accurately ascertained with greater or less difficulty by the
 
 *259
 
 testimony of witnesses to the point, cannot change this character of uncertainty, or prevent the application of the rule that in such a case, the parties having liquidated the damages at a definite sum, they will be regarded as having so intended, and the sum fixed be treated as the measure of .compensation.
 

 I am aware that there are English and American cases holding the doctrine that when the contract binds the parties to do several things of different degrees of importance, and the sum stated is made payable for the non-performance of any or either, it is a penalty; though it may be different in cases where a sum is fixed as damages for the non-performance of a single specified act. The learned judge in
 
 Cotheal
 
 v.
 
 Talmage
 
 (5 Seld., 551), has shown that these cases have no solid foundation in principle, and that the doctrine enunciated has no countenance in the cases of
 
 Astley
 
 v.
 
 Weldon
 
 (2 Bos. & Pul., 346), and
 
 Kemble
 
 v.
 
 Farren
 
 (6 Bing,, 141), from which it is supposed to be derived. There are also cases qualifying the above rule in this respect, that when the sum which is to be a security for the performance of an agreement to do several acts will, in cases of breaches of the agreement, be in some instances too large and in others too small a compensation for the injury thereby occasioned, that sum is to be considered a penalty.
 
 (Davies
 
 v.
 
 Penten,
 
 6 Bar. & Cr., 216.) This qualification of the rule has no foundation in principle or authority, unless among the things agreed to be done is to pay a sum of money, and the agreement is to pay a larger sum as liquidated damages in case of a failure to perform any or either of the stipulations. In such case the law fixes and liquidates the smaller sum, and as Chief Justice Tindall remarked in
 
 Kemble
 
 v. Farren,
 
 “
 
 that a very large sum should become immediately payable in consequence of the non-payment of a very small sum, and that the former should not be considered the penally, appears to be a contradiction in terms.” When the contract is to pay money, if a larger sum be stipulated as damages for the non-payment of a smaller one, the parties will be presumed to have intended the former as a penalty; and when one of the distinct covenants in a contract is to pay a smaller sum of
 
 *260
 
 money than that stipulated as damages for non-performance by the parties, and there are distinct covenants to do or perform other distinct acts, the damages resulting from a breach of which are uncertain in amount, if the larger sum named as liquidated damages be expressed to cover any and all the breaches, it being a penalty in regard to one of the stipulations to be performed, is to be treated as a penally as to all. This is as far as the cases of
 
 Astley
 
 v.
 
 Weldon
 
 and
 
 Kemble
 
 v.
 
 Farren
 
 go; and as far as courts can go, by any reasonable rule of construction, in reaching the intention of the parties to a contract wherever is inserted a clause liquidating the damages. If it were conceded, however, that the doctrine of the cases referred to is to be considered as the established law of this State, it cannot be applied to the present cases. The contract in question, in legal effect, provided but fbr the performance of a single act on each side, and at the same period of time, viz.: the execution and delivery of a deed of the land by the defendant, and payment therefor by the plaintiff. That the defendant agreed to receive in payment for his deed, and the plaintiff to pay, simultaneously with its delivery, the consideration in money and other property, cannot divest what was to be done of the character of a single transaction. If the defendant failed to convey, or the plaintiff to make payment in the way covenanted, there was a total non-performance. The consideration to be paid for the deed was over nine thousand dollars, four thousand of which was to be in cash, and over five thousand in money securities; the cash and transfers of the securities to be passed over to the defendant on the receipt of the deed. It is not at all like the case of
 
 Lampman
 
 v.
 
 Cochran
 
 (16 N. Y., 275), where the contract provided, among other things, that one of the parties should give to the other, on a specified day, a promissory note for $200, and on a subsequent day a bond and mortgage for $2,000, with interest, and the parties agreed therein “ to pay one to the other the sum of $500 as liquidated damages,” on failure to perform the contract. The case but re-affirmed the doctrine in
 
 Astley
 
 v. Weldon, that where a larger gum is stipulated as damages for the non-payment of a smaller
 
 *261
 
 one, the larger sum will be held to be a penalty. In the present case the consideration agreed to be paid on receiving a deed of the defendant’s farm was over $9,000, while the sum agreed upon as damages to be paid by the party failing to perform the agreement was $2,000.
 

 The defendant having broken his contract, I think the proper damages to be awarded for the breach are those liquidated and fixed by agreement of the parties. If a court of law were justified in any case in interfering on the ground that the sum named was grossly disproportionate to the actual injury, such disproportion is not apparent in this case.
 

 The judgment of. the Supreme Court should be affirmed.
 

 Selden and Clerke, Js., expressed no opinion; all the other judges concurring,
 

 Judgment affirmed.