LEGGETT *vs.* THE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK.

The parties to an agreement agreed to do certain acts, and in case of a default by either they "fixed and agreed upon as the liquidated amount of damages" to be paid by the defaulting party, the sum of $5000. *Held,* that the parties having agreed to fix the damages, in language clear and explicit, the amount so fixed was to be treated by the court as the true damage, and not as a *penalty.*

ON the 11th day of November, 1863, the defendants entered into a written contract with the plaintiff to sell and convey to him certain lands and dock property in the town of Flushing, for the sum of $15,000. The contract provided, among other things, that the party failing to fulfill the contract should pay the sum of $5000, as the agreed and fixed amount of liquidated damages. The covenant on that subject was as follows: "And it is further hereby agreed, that in case the said parties of the first part shall fail or refuse to execute and deliver a proper deed of conveyance in manner and at the time and place above specified for that purpose, provided the party of the second part shall be ready to fulfill and perform the covenants then to be fulfilled on his part; or in case the said party of the second part shall fail or refuse to pay the said sum of five thousand dollars in cash and to receive the deed of conveyance from the parties of the first part, and to execute and deliver to them the mortgage for ten thousand dollars herein before mentioned, at that time and place as above agreed upon, provided the parties of the first part shall be ready to deliver such deed of conveyance, as aforesaid; then the party so failing shall and will pay to the other party, or his or their assigns, the sum of five thousand dollars, which sum is hereby declared, fixed and agreed upon, as the liquidated amount of damages to be paid by the party so failing as aforesaid for his or their non-performance."

The contract was to have been completed on the 1st day

of January, 1864. By agreement between the parties, the time for performance was changed to the 31st day of December, 1863. On the 31st day of December, 1863, the plaintiff attended, by his attorney, at the place where the contract was to be completed, and offered to complete the contract on his part, but refused to take the title offered, on account of alleged defects. It was then mutually agreed to adjourn the matter over until January 31, 1864. On the 31st day of January, 1864, the plaintiff still refused to accept the title, on account of the alleged defects. The defendant admitted, by a written acknowledgment, that the plaintiff tendered the money, and the bond and mortgage to be given by him, according to the contract. The plaintiff also acknowledged the tender of a deed from the defendant, and the demand for a performance of the contract on his part, memoranda of which were indorsed upon the contract. The present action is brought to recover of the defendant $5000, as liquidated damages for breach of the contract.

On the trial, before a justice of this court, without a jury, every question of fact and law was decided in favor of the plaintiff, by the court, except as to the construction of the liquidated damage clause in the contract. That the justice construed to be a penal sum, and gave six cents damages. The plaintiff duly excepted to the conclusion of law of the said justice, and also appealed from the judgment entered on the report.

*E. B. Hinsdale,* for the appellant. I. The provision in the contract, that the party failing to fulfill the agreement " shall and will pay to the other party, or his or her assigns, the sum of five thousand dollars, which sum is hereby declared, fixed and agreed upon as the liquidated amount of damages, to be paid by the party so failing as aforesaid for his or their non-performance," is a good and valid agreement in law, fixing and liquidating the damages between the parties, and is to be taken as the true measure of damages.

If *anything* is *settled in law*, this is settled upon authority. The case of *Clement* v. *Cash* is plain and explicit. It was never decided but one way from the circuit to the Court of Appeals. (*Clement* v. *Cash*, 21 *N. Y. Rep.* 253. *Bagley* v. *Peddie*, 16 *id.* 469. *Ootheal* v. *Talmage*, 9 *id.* 551. *Mundy* v. *Culver*, 18 *Barb.* 336. *Dakin* v. *Williams*, 17 *Wend.* 447. *Williams* v. *Dakin*, 22 *id.* 201. *Holmes* v. *Holmes*, 12 *Barb.* 137.)

II. In the contract in the present case, like the case of *Clement* v. *Cash*, while there are several things specified to be done, "it, in legal effect, provided but for the performance of a single act on each side, and at the same period of time, viz. the execution and delivery of a deed of the land by the defendant, and payment therefor by the plaintiff." (*Clement* v. *Cash*, 21 *N. Y. Rep.* 260.)

There was, therefore, in this case a total non-performance of a single and entire contract by the defendant. (*Mundy* v. *Culver*, 18 *Barb.* 336.)

III. The authorities cited by the justice who tried this cause, to support the doctrine that this clause in the contract is to be construed as a penalty, do not sustain his position. They are either plainly distinguishable from the present case, or go to show that the construction contended for by the appellant is the true construction of this contract. In *Dennis* v. *Cummins*, (3 *John Cas.* 297,) the contract provided for the payment of "two thousand dollars damages." The question was, whether it should be considered liquidated damages or a penalty. The court held it to be a penalty. But they say, "It is true that where it is clearly inferable from the *nature* and *terms* of the contract that the parties have estimated and liquidated the damages, and have inserted that sum as the amount to be paid in case of non-performance, *the court will be bound so to consider it.*" In the case of *Lampman* v. *Cochran*, (16 *N. Y. Rep.* 275,) the Court of Appeals explained its decision in *Clement* v. *Cash*. In the case of *Shiell* v. *McNitt*, (9 *Paige*, 101,) it was not an

Leggett *v.* Mutual Insurance Company of New York.

attempt to enforce the *liquidated damage clause* of one thousand dollars, but the defendant was attempting to enforce a judgment he had taken for the first payment, including some rent, on the contract of thirteen hundred and fifty dollars, after the contract had been rescinded, and he had taken possession of the farm again, and resold it. The action was to restrain the defendant from collecting that judgment. In his answer, he alleges that the judgment was to secure $350 back rent, provided for in the contract, and also to secure the $1000 liquidated damages. The chancellor very justly holds that the answer is not consistent with the idea that $1000 were to be the liquidated amount of damages, because the very nature of liquidated damages is that it is the stipulated sum which either should pay who should recede from the agreement, *in full satisfaction* for all claims against him for non-performance of the contract. To say that the stipulated damages are fixed at $1000 for the non-performance of the contract, and then claim to receive and collect $1350, are positions entirely irreconcilable. This case of *Shiell* v. *McNitt* is, therefore, no authority in the present case. The case of *Slosson* v. *Beadle*, (7 *John.* 72,) does not sustain the doctrine that it is cited to support. The plaintiff paid $500 for fifty acres of land, to be conveyed at a future day. The defendant agreed to convey the land, or in lieu thereof to pay $800. It was held to be a case of *liquidated damages*, and a verdict for the $800 and interest was sustained. In the case of *Gray* v. *Crosby*, (18 *John.* 219,) there was an agreement to arbitrate certain matters of difference. There was a stipulation in the agreement to arbitrate, that if either party refused to fulfil the *agreement*, he should pay to the other party five hundred dollars as liquidated damages. The arbitrators made their award, when one of the parties tried to escape from fulfilling the award by paying the $500. The court held that the *agreement* to which the liquidated damages referred was *the agreement to arbitrate, which had been fulfilled.* That

'after the award was actually made, neither party could escape from executing the award.

IV. None of the cases cited by the learned justice who tried this cause in any manner conflict with the authorities cited on the first point. On the other hand, in his opinion he nowhere refers to these authorities, nor shows wherein they differ from the case now before the court. It is a fair inference that they escaped his attention.

V. The justice says, that "when a vendor is unable to convey the title which he obligates himself to convey, and by reason thereof subjects himself to an action for the breach of his contract, he is only liable to nominal damages, unless he is chargeable with fraud or deceit." No authorities are cited to sustain this novel doctrine. It is clearly a statement not well considered by the justice who penned it. It has never yet been held that a plaintiff shall not recover his actual damages for a breach of a contract, without proving "*fraud or deceit.*" Actual damages may be determined in *two ways.* One way is to prove it before a jury; another method is for the parties to settle the amount between themselves. Either method is equally good in law, to arrive at the amount of damage a party sustains by reason of a breach of a contract.

VI. The justice finds, that the plaintiff did not allege or prove actual damages, and in his opinion, says : " To permit under these circumstances a recovery as damages of a sum equal to one third of the whole purchase money, when the plaintiff has paid nothing for the land, would be most unjust." The position of the learned justice is not tenable, for various reasons. 1. It was not necessary to prove the actual damage, where it had been liquidated and settled by the parties themselves. The counsel of the plaintiff had a right to rely upon the case of *Clement* v. *Cash.* As well might a recovery be defeated upon a promissory note because no actual consideration is proved, where the party relies upon the legal presumption of value received. 2. In the case of *Clement* v. *Cash,*

like the present case, " the plaintiff had paid nothing," but stood upon his contract. There is nothing, therefore, in that objection. 3. The justice says it would be " most unjust" to allow a recovery equal to one third of the purchase money. That depends upon the circumstances of each case. If the plaintiff had a bargain of considerable value to him, he should have the benefit of it. In this case it appears that the defendant, in 1859, made a loan of $20,000 on the property. By their charter, they can loan on bond and mortgage to only one half of the value of real estate. Somebody, then, estimated the value of the property, in 1859, to be $40,000. That in 1864 the property might have been worth $20,000 to this plaintiff is altogether probable. 4. In *Clement* v. *Cash,* the consideration to be paid for the farm was $9000 ; the damages were fixed at $2000. The court says : " If a court of law were justified in any case in interfering, on the ground that the sum named was grossly disproportionate to the actual injury, such disproportion is not apparent in this case." If it was " not apparent" in that case of farming land in the country, much less is it " apparent" in this case of dock property, where the liquidated damages, as fixed in the contract, are not proportionally very different from that case. In the case of *Glosson* v. *Beadel,* (7 *John.* 72,) the consideration for the purchase of the land was $500. The liquidated damages were $300, or more than fifty per cent of the purchase money.

VII. The justice states that the court will not permit " unreasonable compensation," " when the damages which a party actually sustained can be readily ascertained." This rule, whenever it has been applied, has been to those cases where the *face of the contract* furnishes the data for showing that the compensation is unreasonable. (*Bagley* v. *Peddie,* 16 *N. Y. Rep.* 469.) In the present case, the face of the contracts throws no light upon the subject. It is notorious that property in the vicinity of New York often fluctuates within a year, from various causes, fifty per cent or more.

There would be a wide difference of opinion among intelligent men, now, as to the value of the dock property in question. To say that the damages could be "readily ascertained" in this case is extraordinary. It is a most proper case for parties to liquidate their own damages.

VIII. If the plaintiff is entitled to recover *any thing* in this case, he is entitled to the whole $5000. If the defendant should seek to *reform* the *contract* on the ground of error, a court of equity might have the power to relieve them, in a proper case ; but this court has no power, by mere *construction* of language, to make the contract mean a different thing from what the parties have expressed. (*Clement* v. *Cash*, 21 *N. Y. Rep.* 253.)

*B. W. Huntington*, for the respondent. I. There was no error in the finding and decision of the justice (who tried the case without a jury,)that the stipulated damage clause should be construed as a penalty. His decision was that courts would not permit unreasonable compensation under the name of liquidated damages, when the actual damages could be easily ascertained ; that the proposed vendor of real estate, if unable to convey, and not chargeable with fraud or deceit, was only liable to nominal damages ; that there was no pretense of intent to injure in this case, and that to permit, under the circumstances, a recovery of an amount equal to one third of the whole purchase money, (that being $15,000,) when the plaintiff had paid nothing for the land, would be most unjust. Unless the appellant can allege that the justice has erred in the law, or has misfound some fact, error cannot be assigned. That the learned justice ruled the law correctly can hardly be disputed. The rule is thus stated by Pofessor Parsons : "The law will permit parties to determine, by an agreement which enters into the contract, what shall be the damages which he who violates the contract shall pay to the other ; but it does not always sanction or enforce the bargain they may make on this subject. Dam-

Leggett *v.* Mutual Insurance Company of New York.

ages thus agreed upon beforehand, when sanctioned by the law, are called liquidated damages, when the parties make this agreement, but not in such wise that the law adopts it, when the damages thus agreed upon are a penalty, or in the nature of a penalty." (3 *Pars. Cont.* 156.) "It is obvious that where parties agree upon the damages to be paid for a breach of contract, whatever name they give to it, they do substantially the same thing which is done by a bond with penalty. And there is no more reason why courts should regard the agreement, if it opposes reason and justice, in the one case than in the other." (*Id.* 157.) A proper agreement for liquidated damages " the court will not set aside, unless for such obvious excess and disproportion to all rational expectation of injury as make it certain that the principle of compensation was wholly disregarded." (*Id.* 161.) In *Clement* v. *Cash,* (21 *N. Y. Rep.* 256, 257, 259,) the Court of Appeals recognizes the same rule ; citing *Cotheal* v. *Talmage,* (5 *Seld.* 551,) to the point, " when they have settled that compensation, neither a court of law, nor a court of equity will diminish its amount unless it be so grossly disproportionate to the actual injury, that a man would start at the bare mention of it." " Where the sum fixed is greatly disprotionate to the presumed actual damage, probably a court of equity may relieve. (*P.* 257.) " If a court of law were justified in any case in interfering on the ground that the sum named was grossly disproportionate to the actual injury, such disproportion is not apparent in this case." (*P.* 259.) In *Clement* v. *Cash,* the consideration to be paid for the land was over $9000, and the damages $2000. What the appellant practically asks this court to do is, to reverse the judgment below, not because the justice has misruled as to the law, or found any fact erroneously, but because his conscience was so formed that he regarded the sum named as liquidated damages to be grossly disproportionate to the actual injury. This court, or each member of it, if trying the cause, might find differently, and yet there

be no error for which the present judgment can be reversed upon appeal. The justice decided, as matter of law, that if the sum named as damages was grossly disproportionate to the injury, he need not sanction the literal contract of the parties ; and he found, as matter of fact, in place of the jury, that it was grossly disproportionate. Suppose he had instructed a jury that if they should find that the damages stipulated were grossly disproportionate to the injury, they must find only nominal damages for the plaintiff; where would have been the error, and how could the verdict have been disturbed ?

II. The court found correctly, as a question of fact and law, that the liquidated damages must be construed as penal. Upon the question, whether damages are to be construed as liquidated or penal, the court may take some aid from circumstances extraneous to the writing. (*Perkins* v. *Lyman*, 11 *Mass. R.* 76, 81, *cited in* 3 *Pars.* 163, *n. i.*) The manner in which a liquidated damage clause happened to be inserted in an agreement, was taken into consideration in *Jackson* v. *Baker*, (2 *Edw. Ch. Rep.* 476.) This case shows that the company's president had never seen, for the fourteen years of his presidency, any agreement to convey real estate except the present, and that he not only did not report the liquidated damage clause to the finance committee, but did not know of it. The defendant offered to prove the exact circumstances under which the agreement was drawn, and the liquidated damage clause inserted, but upon objection by the plaintiffs' counsel, was overruled and excepted. The further facts which the court refused to find, because of immateriality, and to which refusal the defendant excepted, tend to show that upon the circumstances nothing but a penalty could have been intended.

III. This case is distinguishable from *Clement* v. *Cash*, (21 *N. Y. Rep.* 253:) 1st, on account of gross disproportion ; 2d, because the agreement in that case declared that the parties had "ascertained" what the damages would be ;

3d, because the defendant had a good title, and was able to convey one, and refused to do so upon a mere pretext; 4th, because the purchaser, besides assigning mortgages by other parties of nearly $5000, and executing notes on the law day of the contract, was to pay $4000 cash, and the sum named as damages was only $2000.

IV. The rule is universal that where a greater sum is to be paid in default of a less, a penalty is intended; the reason of the rule is the same where the sums, as in this case, are the same.

V. The charter of the company prohibited it from conveying any other title than it acquired by the foreclosure sale; also from buying in any other title; consequently, if its foreclosure title was defective, it had no corporate power to convey a good one.

VI. The charter directs how the company may make contracts and dispose of its funds. It has no power to enter into a contract to pay $5000, if it has not a good title to real estate. It must act by its agents. The case of *Gibson* v. *Colt*, (7 *John.* 390,) that an agent with power to sell, may warrant, is said by Bronson, J. in *Nelson* v. *Cowing*, (6 *Hill*, 336,) to be "shaken, if not overthrown" by *Sandford* v. *Handy*, (23 *Wend.* 260.) Conceding that the defendant may execute an ordinary full covenant deed, and contract to execute one, and be liable to return the purchase money, with interest, for breach of the one, or to nominal damages or rescission of the contract for breach of the other, a covenant to pay stipulated damages for failure of title is extraordinary, and therefore not within the doctrine that a corporation may contract like a natural person. A corporation with power to convey land under certain restrictions has all the incidental powers and is subject to all the incidental liabilities implied in law, but nothing further. Thus, where a bank charter provided that all bills, &c. and every contract or engagement should be signed by the president and countersigned by the

cashier, it was held that this clause applied to express contracts only, and that the bank was liable under money counts on a check signed by the cashier. (*Mechanics' Bank* v. *Bank of Columbia,* 5 *Wheat.* 326. *Ang. & A.* 8*th ed.* 286.) A covenant to pay $5000 upon a failure of title is an express contract. The express contracts which the company may make are enumerated or indicated in the charter, and relate to contracts of insurance, investing of premiums, and the purchase and conveying of particular real estate. They do not include contracts to pay stipulated damages upon a failure of title. Such contracts are unusual. They are intrinsically penal; for if a vendor has no title, specific performance cannot be decreed against him, and the damages would be in the nature of a compensatory punishment for his having undertaken to convey what he did not possess. In the case of the defendant, it is restrained by its charter from holding, purchasing or conveying lands, except in a particular way and of a particular character; consequently, it cannot go into market as a customer at large, to buy up incumbrances, nor has it power to pay for peace. The charter protects and inhibts it from dealing in doubtful titles. In case of an exigency, it might obtain power from the legislature, or by means of the equity jurisdiction of a court, to perfect its title in a proper way, but would be powerless unless so enabled. A covenant to pay stipulated damages, is a covenant to indemnify to a certain extent. The deed of a joint stock banking company required that the directors should not be less than *five,* but that three or more might transact ordinary business, and that the directors should have power to compromise debts. *Four* directors executed a deed compromising a debt, taking from the debtor a large mining concern and covenanting with him in behalf of the company to indemnify him against certain bills of exchange. In an action for not indemnifying, the court decided that the covenant did not bind the company, it not being *ordinary* business, and therefore the four

Leggett v. Mutual Insurance Company of New York.

directors were incompetent to make it. (*Kirk* v. *Bell*, 16 Q. B. 290, 12 *Eng. L. and Eq.* 385. *Ang. & A.* 8th ed. 286.)

*By the Court*, GEO. G. BARNARD, P. J. The parties made the contract under which this claim arises. They agreed mutually to do certain acts, and in case of a default by either they "fixed and agreed upon as the liquidated amount of damages," to be paid by the defaulting party, the sum of five thousand dollars. With this covenant in evidence, the court decided to make a new agreement for the parties, and to determine that the sum of $5000 was *intended* by the parties as a penalty, and, in the absence of any other proof of damage, that the plaintiff was only entitled to recover a nominal sum of six cents. If a court may determine that a sum agreed upon by the parties be excessive and therefore a penalty, there should be some principle to determine at what sum short of the fixed amount the court would have upheld the agreement of the parties. To reduce damages established by covenant, as in this case, by findings after a trial, when it is impossible to give any other proof, does not seem to me to be just, even if the principle under which it was done, was unquestioned. Under the case of *Clement* v. *Cash*, (21 *N. Y. Rep.* 253,) it seems to me the binding force of this covenant is settled. The words are clear, and the language used permits no question of construction. The parties agreed to fix the damage, and did so, and in cases like this they may do so, and the amount so fixed is to be treated by courts as the true damage.

The judgment should be reversed and a new trial granted, costs to abide the event.

[NEW YORK GENERAL TERM, January 6, 1868. *Geo. G. Barnard, Ingraham* and *Sutherland*, Justices.]