Peelle, Ci-i. J.,
delivered.the opinion of the court:
This action is to recover $276.48 deducted by the accounting officers as liquidated damages for one hundred and eight days’ delay of the claimant in the performance of its contract with the Government for the delivery of a certain turbo-generator at Watervliet Arsenal, N. Y.
The contract was entered into August 29, 1906, between the claimant company and the United States through the commanding officer of said arsenal, whereby the claimant company agreed to deliver at said arsenal within one hundred and twenty-five days from said date a turbo-generator for $6,400.
*473 The remaining parts of the contract material to the case are as follows:
“Article 3. Payments will be made not oftener than once a month for material furnished under this contract, on the proper certificate of the inspecting and receiving officers, showing acceptance and delivery, but from all such payments -per cent will be retained until the completion of the contract: Provided, however, That in the event of the failure of the party of the first part to deliver all of the material contracted for by the time stipulated in the contract for final delivery, there will be deducted as liquidated damages, from any payment to be made, one twenty-fifth of 1 per cent of the contract price of the material remaining undelivered for each and every day of delay determined in accordance with the proviso in article 6. It is mutually agreed that this deduction is not made by way of penalty, but as liquidated damages, the deduction representing, as nearly as practicable, the value of the material to the United States during the period of delay, and is also in lieu of the damages and losses referred to in article 6, except the cost of inspection.
“Article 5. In the event of the failure of the party of the first part to prosecute properly at any time the manufacture of the material herein contracted for, or to complete the delivery at the time agreed upon in article 1 of this contract, the contracting officer, or his successor, may, after notification in writing, with the approval of the Chief of Ordnance, United States Army, proceed at the expense of the party of the first part to complete the manufacture or delivery of the material contracted for, or of any part thereof, in such manner as he may deem best for the interests of the public service, charging any excess of cost resulting from such failure to the party of the first part.
“Article 6. In the event of the failure of the party of the first part to complete the delivery of the material contracted for at the time specified in article 1 of this contract the contracting officer, or his successor, in lieu of annulling the contract, as provided for in the preceding article, may waive the time limit, and upon notification thereof the party of the first part shall complete 'the delivery within a reasonable time, and there shall be deducted from any payment due all extra expenses of inspection and such other actual damages and losses as the United States may sustain on account of said failure, and which are to be determined by the said con *474 tracting officer or bis successor: Provided, however, That in making final settlement based upon the elate of completion of the delivery the party of the first part shall receive credit for such delays occurring during the performance of the contract as the said contracting officer, or his successor, may determine to have been due to unavoidable delays, such, as fires, storms, labor strikes, action of the United States, etc., and the date of completion shall be considered for the purposes of final settlement as the date of actual completion of the delivery less the delays due to said unavoidable causes; but none of the above causes shall constitute a basis for an action against the United States for damages.”
As the contracting officer did not elect to annul the contract and complete the delivery at the expense of the claimant comiiany for its failure, or waive the time limit, as he might have done under articles 5 and 6 of the contract, no question of expense or. .damage to the United States on account of the failure arose for determination by said officer. Nor was he called upon to determine under the proviso to said article 6 whether the claimant company was entitled to credit “ due to unavoidable delays, such as fires, storms, labor strikes, action of the United States,” etc. In other words, as the contractor was permitted, without interruption, to complete final delivery one hundred and eight days beyond the time fixed therefor in the contract the provision of article 3 alone applies, and, therefore, the amount as liquidated damages was properly deducted.
That the amount was intended by the parties as liquidated damages and not as penalties is made certain by the language used, i. e., “ it is mutually agreed that this deduction is not made by way of penalty, but as liquidated damages,” the amount agreed upon “ representing, as nearly as practicable, the value of the material to the United States during the period of delay; ” and we may add that the draftsmen of the contract evidently had in mind that this j>rovision should control, even if the time limit provided for in article 6 should be waived, for it is therein provided that the amount so deducted as liquidated damages shall also be “ in lieu of the damages and losses referred to in article 6, except the cost of inspection,” thus in terms plussing the liquidated damages with the cost of inspection.
*475 But, as before stated, the question here as presented must be determined by the provisions of article 3, no action having been taken by the contracting officer under article 6.
Having determined that the amount deducted was liquidated damages, it is immaterial to inquire whether the amount was the actual damage sustained by the Government, even if that question in the condition of this case can be inquired into, as at the time of the execution of the contract the amount was agreed upon between the parties as the measure of compensation for delay, and, being reasonable, must be allowed as liquidated damages. (Ellicott Machine Co. v. United States, 43 C. Cls. R., 232, and authorities there cited.)
The latest and perhaj)s most far-reaching case on the subject is that of United States v. Bethlehem Steel Co. (205 U. S., 105, 119), wherein the court, in considering the question whether a provision in a contract was for liquidated damages or a penalty, said:
“ The courts at one time seemed to be quite strong in their views and would scarcely admit that there ever was a valid contract providing for liquidated damages. Their tendency was to construe the language as a penalty, so that nothing but the actual damages sustained by the party aggrieved could be recovered. Subsequently the courts became more tolerant of such provisions, and have now become strongly inclined to allow parties to make their own contracts and to carry out their intentions, even when it would result in the recovery of an amount stated as liquidated damages, upon proof of the violation of the contract, and without proof of the damages actually sustained. This whole subject is reviewed in Sun Printing & Publishing Association v. Moore (183 U. S., 642, 669), where a large number of authorities upon this subject are referred to. The principle decided in that case is much like the contention of the Government, herein. The question always is, What did the parties intend by the language used? When such intention is ascertained, it is ordinarily the duty of the court to carry it out. (See also Clement v. Cash, 21 N. Y., 253, 257; Little v. Banks, 85 N. Y., 258, 266.)”
As the intention of the jDarties is clear from the language used in article 3, we must hold that the amount was properly deducted as liquidated damages,'and therefore the petition is dismissed.