MORRIS FLEISHER, Respondent, v. JOHN B. FRIOB, HENRY MARTINSON, JOSEPH MARTINSON and HENRY OESTREICHER, Appellants.

(Supreme Court, Appellate Term, First Department, November, 1916.)

Lease — covenants thereof — landlord and tenant — summary proceedings — pleading — actions — liquidated damages.

It is well settled that a clause in a lease permitting the landlord merely to " re-enter " for covenant broken refers solely to re-entry by the common-law action of ejectment, and where the lease further provides that in the event of such re-entry the landlord may relet as agent of the tenant, receive the rents and hold the tenant liable for any deficiency the landlord's privilege and the consequent obligation of the tenant to respond in damages for the difference in rent do not survive a dispossess by summary proceedings.

A sublease of premises used as a theatre to plaintiff by defendants, the original lessees, for a term of five years at a rental of one hundred dollars weekly, payable in advance, contained the following:

" 8th. That if the said premises, or any part thereof, shall become vacant during the said term, the Landlord or their representatives may re-enter the same, either by force or otherwise, without being liable to prosecution therefor; and re-let the said premises as the Agent of the said Tenant and receive the rent thereof, applying the same, first to the payment of such expenses as they may be put to in re-entering, and then to the payment of the rent due by these presents; the balance (if any) to be paid over to the Tenant who shall remain liable for any deficiency."

" 13th. That if default be made in any of the covenants herein contained, then it shall be lawful for the said Landlord to re-enter the said premises, and the same to have again, re-possess and enjoy. The said Tenant hereby expressly waives the service of any notice in writing of intention to re-enter, as provided for in third section of an act entitled 'An act to abolish distress for rent, and for other purposes,' passed May 13th, 1846."

"21. The Tenant herewith deposits the sum of Fifteen Hundred ($1500) Dollars as security for the faithful performance of the terms, covenants and conditions of the within lease and the safe return to the Landlords of any and all personal property leased herein, the receipt whereof is hereby acknowledged, by the Landlords and in the event of a breach of any of the terms, covenants and conditions of the within lease, the landlord shall retain the said security as fixed and liquidated damages and not by way of penalty, and upon the faithful compliance by the tenant of the terms, covenants and conditions herein, the said sum of Fifteen Hundred ($1500) Dollars shall be applied towards the payment of the rent for the last fifteen weeks of the term herein demised."

In an action by the subtenant against his landlord to recover the balance of $1,500 deposit, the complaint alleged that plaintiff was dispossessed by defendants for nonpayment of certain rent; that summary proceedings and the warrant therein duly issued and executed "canceled and annulled said lease except that the defendants were entitled to receive $275 as rent, etc.," and that the terms of paragraph 21 of the lease "are null and void and of no effect, etc." By the answer, which was served, on or about June 15, 1914, the removal of the tenants by summary proceedings was admitted and it conclusively appeared by the judgment-roll put in evidence that the proceeding was brought solely for nonpayment of rent. By way of counterclaim defendants allege that rent was due to them up to and including the 15th of June, 1914, in the amount of $700 less $125, theretofore paid by the tenant, leaving a balance of $575 due for which judgment was demanded. For the purpose of an appeal from a judgment in favor of plaintiff entered on a verdict plaintiff was willing to credit defendants with $275 unpaid rent up to the time of the issuing of the precept in summary proceedings on May 29, 1914, and that defendants' counterclaim included that sum and two weeks' additional rent alleged to have accrued subsequently to the issuance of the dispossess warrant. On the trial which took place June 22, 1916, defendants by plaintiff's consent were permitted to amend the counterclaim so as to include rent "for the last week of April, 1914, up to and including August, 1914, aggregating the sum of $1,700 less $125 paid" and defendants claimed nothing beyond August, 1914, because of their eviction from the premises by the dominant landlord.

Held, that a ruling upon a denial of defendants' motion to dismiss the complaint, made before any evidence was offered, that the 8th paragraph of the lease had reference solely to the contingency of the premises becoming vacant during the term, whereas the summary proceedings had been brought for nonpayment of rent under paragraph 13 of the lease, was correct.

In accordance with such ruling there was left to the jury as a single issue of fact to determine whether the plaintiff had vacated the premises prior to the time of his removal by virtue of the warrant, and the jury having found in favor of the plaintiff that there had been no such vacancy no other covenants of the lease survived the dispossess and it follows that the action was not prematurely brought.

A ruling of the trial judge that the provision in paragraph 21 of the lease for liquidated damages was to be construed as one for a penalty merely, held correct.

APPEAL by defendants from a judgment of the City Court of the city of New York in favor of plaintiff, entered upon the verdict of a jury.

Cherurg & Falk (George Cherurg, Rudolph L. Cherurg, Samuel M. Reiss and Moe Reiss, of counsel), for appellants.

Morris Spevack, for respondent.

BIJUR, J. This action was brought by plaintiff to recover from defendants the balance of a deposit of $1,500 placed by plaintiff with defendants as security under a lease. Defendants were themselves merely lessees of the premises, which were used as a theatre.

On December 1, 1913, they executed to plaintiff a sublease of the premises for a term of five years, namely, from December 1, 1913, to December 1, 1918, at a rental of $100 weekly payable in advance.

The lease contained, among other material provi-

sions, the following clauses, which are so important as to require literal reproduction:

"8th. That if the said premises, or any part thereof, shall become vacant during the said term, the Landlord or their representatives may re-enter the same, either by force or otherwise, without being liable to prosecution therefor; and re-let the said premises as the Agent of the said Tenant and receive the rent thereof, applying the same, first to the payment of such expenses as they may be put to in re-entering, and then to the payment of the rent due by these presents; the balance (if any) to be paid over to the Tenant who shall remain liable for any deficiency."

"13th. That if default be made in any of the covenants herein contained, then it shall be lawful for the said Landlord to re-enter the said premises, and the same to have again, re-possess and enjoy. The said Tenant hereby expressly waives the service of any notice in writing of intention to re-enter, as provided for in the third section of an act entitled 'An act to abolish distress for rent, and for other purposes,' passed May 13th, 1846."

"21. The Tenant herewith deposits the sum of Fifteen Hundred ($1500) Dollars as security for the faithful performance of the terms, covenants and conditions of the within lease and the safe return to the Landlords of any and all personal property leased herein, the receipt whereof is hereby acknowledged, by the Landlords and in the event of a breach of any of the terms, covenants and conditions of the within lease, the landlord shall retain the said security as fixed and liquidated damages and not by way of penalty, and upon the faithful compliance by the tenant of the terms, covenants and conditions herein, the said

sum of Fifteen Hundred ($1500) Dollars shall be applied towards the payment of the rent for the last fifteen weeks of the term herein demised.''

Apart from the covenant to pay rent, the tenant also agreed to deliver up the premises at the termination of the lease in good condition; to execute all rules, orders, ordinances and regulations of the city government and its bureaus; not to under-let or alter the premises without the landlords' consent; to refrain from placing signs upon the building except as indicated by the landlord; to pay nine dollars and fifty cents monthly for a watchman's clock service, with a provision that in the event of default in such payment, the amount should be added to the rent; and to procure at his own expense fire insurance covering the chattels leased.   There are other agreements on the part of the tenant, but as they seem to be largely regulatory and of very slight importance, I do not mention them in detail.

The complaint, served on or about June 1, 1914, alleges that on May 25, 1914, the plaintiff was dispossessed by the defendants by summary proceedings brought for non-payment of rent; that at that time there was due defendants three weeks' rent, less $25 paid on account thereof, namely, a net amount of $275; that the summary proceedings and the warrant thereunder duly issued and duly executed '' cancelled and annulled said lease, except that the defendants were entitled to receive $275 as rent, etc.;'' that the terms of paragraph 21 of the lease (covering the deposit of $1,500) '' are null and void and of no effect for the reason that the same are contrary to law, and contrary to public policy, and, because of the terms and covenants therein contained, amount in effect to a forfeiture or penalty, and that the said covenants do not constitute liquidated damages.   *   *   *  ''

In the answer, served on or about June 15, 1914, the removal of the tenants by summary proceedings was admitted; and, notwithstanding some indirect denial, the judgment-roll introduced into evidence showed conclusively that the proceeding was brought for the non-payment of rent solely, and that the final order was made " by reason of the tenant's non-payment of said rent;" and there is no dispute about that fact.

By way of counterclaim, the defendants alleged that rent was due to them up to and including the 15th day of June, 1914, in the amount of $700, less $125 theretofore paid by the tenant, leaving a balance of $575 due, wherefore judgment was demanded against the plaintiff for said $575.

It is not important to adjust precisely the apparent difference in calculations between the complaint and answer. It suffices for the purposes of this appeal to note that the plaintiff was willing to credit the defendants with $275 unpaid rent up to the time of the issuing of the precept in the summary proceedings, May 29, 1914, and that the defendants' counterclaim included that sum of $275 and two weeks' additional rent alleged to have accrued subsequently to the issuance of the warrant in dispossess.

Upon the trial, which took place June 22, 1916, defendants were permitted, with plaintiff's consent, to amend the counterclaim to include rent " for the last week of April, 1914, up to and including August 14th, aggregating the sum of $1,700, less $125 paid," namely, for a net sum of $1,575. Defendants claimed no amounts beyond August, 1914, because they were on that date themselves evicted from the premises by the dominant landlord. Before any evidence was offered, the defendants moved to dismiss the complaint on the grounds, *first,* that the action had been

prematurely brought, and, *second,* that the complaint failed to set forth a cause of action. The motion was denied and due exception taken.

In support of the first ground, defendants urged that notwithstanding the summary proceedings the plaintiff's covenant to pay rent survived until August, 1914, that, consequently, defendants had the right to hold the deposit as security until that time, and therefore that the action brought in June, 1914, was premature. This argument is based upon the assumption that the summary proceedings did not terminate all the tenant's obligations under the lease. Defendants, of course, concede that, unless special provision be found in the lease to the contrary, the issuance of the warrant in summary proceedings would abrogate the lease. Their claim was, however, that this result was obviated by the provisions of paragraph 8, hereinabove quoted. A recess was taken by the learned judge below for an examination of the lease and authorities, and on reconvening the motion was denied on the ground, in substance, that the eighth paragraph had reference solely to the contingency of the premises becoming vacant during the term, whereas the summary proceedings had been brought for nonpayment of rent under paragraph 13 of the lease. In my opinion, this ruling upon a vital point in the case was correct.

Since the decision of *Michaels* v. *Fishel,* 169 N. Y. 381 (1902), it is well settled that a provision permitting the landlord merely to "re-enter" for covenant broken refers solely to re-entry by the common law action of ejectment, and that, consequently, where in a lease it was further provided that in the event of *such* re-entry the landlord might re-let as the agent of the tenant, receive the rent, and hold the tenant liable for any deficiency, the landlord's privilege, and the

consequent obligation of the tenant to respond in damages for the difference in rent, did not survive a dispossess by *summary proceedings*.  As a result of that decision there was an extensive, and, in some cases, an intelligent revision of the forms of leases.

In *Anzolone* v. *Paskusz,* 96 App. Div. 188 (1904), a lease was considered which contained a clause similar to the one interpreted in the *Michaels* case, except that it permitted the landlord to " re-enter the premises either by force or *otherwise,*" and provided for the survival of the tenant's obligation to indemnify the landlord for a difference in rent of the premises when relet after any such re-entry. It was there held (p. 193), after consideration of the *Michaels* case, that: " The word ' otherwise ' necessarily broadens the significance of the word ' re-enter ' and prevents its limitation to the technical definition of that word." It was decided, therefore, that the tenant's obligation to indemnify the landlord, and the provisions in the lease covering a deposit of $2,000 as security, survived the removal of the tenant by summary proceedings. Other examples of forms of leases designed to overcome the technical difficulty are to be found in *Baylies* v. *Ingram,* 84 App. Div. 360 (1903) ; affd. without opinion, 181 N. Y. 518; *Asher-Simon Realty Co.* v. *Goldberg,* 61 Misc. Rep. 634 (1909, and *Pannuto* v. *Foglia,* 55 id. 244 (1907). See, also, *Longobardi* v. *Yuliano,* 33 Misc. Rep. 472 (1900). On the other hand, careless revision of forms of leases has failed of its purpose. Thus in *Wolf* v. *Rudinsky,* 135 App. Div. 175 (1909), the lease contained two clauses, the 18th and 16th identical with the 8th and 13th respectively in the instant case. It was there pointed out that the survival of the tenant's obligation was " limited to the contingency of the premises becoming vacant," and that, therefore, the obligation did not survive where the dispossess

was for non-payment of rent. See, also, *Chaude* v. *Shepard,* 122 N. Y. 397, 402, 403 (1890). The distinction is, of course, a narrow one and has occasionally been overlooked. Appellants now cite to us a case reported since the trial herein, *i. e., Blumberg* v. *Corday,* 160 N. Y. Supp. 613, affd. without opinion, 155 id. 1095, and approved in *Halpern* v. *Manhattan, etc., Corp.,* 160 id. 616, 621 (July, 1916) where a similar provision for the continuance of the tenant's obligation was held to survive a dispossess for nonpayment of rent, although the survival was expressly conditioned solely upon the premises becoming vacant. An examination of the briefs submitted on the appeal in the *Blumberg* case discloses, however, that the point was not made nor even remotely suggested by counsel for either party, and the court's attention was consequently directed to other phases of the case.

It follows, therefore, that the ruling of the learned judge below in the case at bar was correct to the effect that the obligation of the tenant to indemnify the landlord for loss of rent subsequent to the tenant's removal by summary proceedings was limited to the event that the summary proceedings be brought because the premises *had become vacant* and did not survive a removal if made as alleged in the complaint and conceded on the trial, solely *for nonpayment of rent.* In accordance with this ruling, there was left to the jury, practically as the single issue of fact, to determine whether the respondent had vacated the premises prior to the time of his removal by virtue of the warrant. On this issue the finding of the jury was in favor of the tenant respondent, namely, that there had been no such vacancy. Since it is clear that no other covenants survived the dispossess, it follows that the action was not prematurely brought.

Before passing to a consideration of the appellants' other ground for urging the dismissal of the complaint, which was that the provisions of the lease constituted the deposit liquidated damages rather than a penalty, it may be well to note for purposes of clarity that the precise question whether the action was prematurely brought would not arise in a case where the deposit must be treated as liquidated damages, for in that event the tenant could not recover any part of the amount deposited; in other words, he would be defeated on the merits. It is only where such deposit must be treated as a '' penalty '' to be applied upon the tenant's surviving obligation to meet the rental loss at the respective dates of each installment as it falls due, that the contention is apt that no action can be brought for a return of the deposit until the term originally fixed in the lease has elapsed.

We come then to the question whether the learned judge below was right in his further ruling that the deposit in the instant case was one by way of penalty, and not to be treated as liquidated damages, although expressly so denominated in the lease. The general rules for determining whether a provision of the kind here involved is one for liquidated damages or merely for a penalty seem to be fairly well settled. In the first place: '' The circumstance that the deposit is described in the lease as liquidated damages for a breach of the agreement is not at all conclusive. The character of the deposit, whether liquidated damages or a penalty, depends upon the intention of the parties as disclosed by the situation and by the terms of the instrument.'' *Caesar* v. *Rubinson,* 174 N. Y. 492, 496.

In order to ascertain that intention, it has been usual to apply the doctrine that: '' Where the language of such a provision specifying the amount of

damages to be paid in case of a breach of the contract is clear and explicit to that effect, the amount is to be deemed liquidated damages when the actual damages contemplated at the time the agreement was made are in their nature uncertain and unascertainable with exactness and may be dependent upon extrinsic considerations and circumstances, and the amount is not on the face of the contract out of all proportion to the probable loss. (*Curtis* v. *Van Bergh,* 161 N. Y. 47; *Ward* v. *Hudson River Bldg. Co.,* 125 id. 230).'' *Cæsar* v. *Rubinson,* 174 N. Y. 492, 496; *Sun Printing & Pub. Co.* v. *Moore,* 183 U. S. 642, 660, 668; *United States* v. *Bethlehem Steel Co.,* 205 id. 118–119; *Mosler Safe Co.* v. *Maiden Lane Safe Deposit Co.,* 199 N. Y. 479. Of course, since the aim of the court is to arrive at the intention of the parties '' The instrument is not to be construed with reference to the conditions as they existed at the time when the breach of the covenant to pay rent happened. On the contrary, it is to be construed solely with reference to the language used and the surrounding circumstances as they existed at the time when the instrument was executed.'' *Cæsar* v. *Rubinson,* 71 App. Div. 180, 184. The same consideration is pointed out in the extract which I have quoted from the opinion of the Court of Appeals (reversing this decision) in 174 N. Y. 492, 496, 497.

Although in the case of leases of real estate the lessee almost invariably subscribes to a large number of other covenants in addition to his covenant to pay rent, little attention seems to have been paid in the decisions to rules which have an important bearing in that regard. They are to the effect that where a sum is specified as liquidated damages for the breach of a number of different covenants, some or one of which provides merely for the payment of a fixed sum of

23

money, the provision will be regarded as one for a penalty. It has also been held that a sum so fixed will be treated as a penalty where any one of the several stipulations is of such character as that the damages flowing from its breach can be seen to be readily ascertainable. *Cotheal* v. *Talmage,* 9. N. Y. 551, 557, Whether this rule is properly extended to the point that such sum must be treated as a penalty " where upon the face of the instrument it appears that it will necessarily be an inadequate compensation for the breach of some of the provisions and more than enough for the breach of others," as determined in *Lampman* v. *Cochran,* 16 N. Y. 275, has been seriously questioned, notably in *Clement* v. *Cash,* 21 N. Y. 253, 259, 260. See also marginal note containing the " classification of the decisions " by Sir George Jessel, in *Wallis* v. *Smith* (1882), Ch. Div. 243, quoted in *Sun Printing & Pub. Co.* v. *Moore,* 183 U. S. 642, 666; also *Brownold* v. *Rodbell,* 130 App. Div. 371, 377; *Chicago House Wrecking Co.* v. *U. S.,* 106 Fed. Repr. (C. C. A.) 385, 393; *Wilhelm* v. *Eaves,* 27 Pac. Rep. (Or.) 1053; *Longobardi* v. *Yuliano,* 33 Misc. Rep. 472.

It would seem nevertheless to be perfectly logical that where a gross sum is deposited as security against or stipulated to be paid upon a breach of a number of covenants or agreements any one of which is of such character as that if it were the sole agreement secured it would require the amount named as security to be treated as a penalty, the gross sum should be so treated. For it follows quite naturally that had the parties really intended that the security should be treated as liquidated damages, they would have so apportioned it as to prevent the infirmity. If, therefore, one or more of the covenants secured is for the payment of a fixed sum or is one the damages for the

breach of which are manifestly readily ascertainable or the damages for the breach of which are plainly so much less than the amount fixed as "liquidated damages" as that the latter are "out of all proportion to the probable loss (*Ward* v. *Hudson River Bldg. Co.*, 125 N. Y. 230, 235)" the security would as to *those* covenants certainly be deemed a penalty, and, as I have said above, it is difficult to escape the conclusion that if the security be not divided or apportioned it must, as a natural sequence, be treated as a penalty as to all covenants. The subject is discussed at some length in *Wallis* v, *Smith, supra* (1882), 21 Ch. Div. 243, by Sir Henry Cotton, the learned judge who sat in that case with the master of the rolls, as also by Sir Edward Fry in the court below. See also cases cited on these points in the American Digest (Vol. 15, § 163, p. 1846; § 165, p. 1854; § 171, p. 1861), and in the Decennial Digest ('06, vol. 7, § 78 (7), p. 88; § 79 (2) 90), and particularly *Dunlap & Tyre Co.* v. *New Garage, etc., Co.*, 1915 A. C. 79.

. I confess that the application of these rules, or indeed the recognition of the distinctions suggested thereby, does not appear to have been uniform in the adjudicated cases in this state; but in large part such apparent inconsistencies lie frequently rather in expressions used *arguendo* than in the actual determination of the respective cases. See for example, *Peabody* v. *Richard Realty Co.*, 69 Misc. Rep. 582; affd without opinion, 145 App. Div. 983, 207 N. Y. 642; *Feyer* v. *Reiss*, 154 App. Div. 272, in both of which cases the provision was held to be one for liquidated damages.

On the other hand, it has been construed as a penalty in *Feinsot* v. *Burstein*, 78 Misc. Rep. 259; 82 id. 429; affd., 161 App. Div. 651, and again affd. without opinion, 213 N. Y. 703; *Steiger* v. *Feldman*, 94 Misc.

Supreme Court, Appellate Term, November, 1916. [Vol. 97.

Rep. 243; *Halpern* v. *Manhattan Ave. Theatre Corp.*, 173 App. Div. 610; *Cæsar* v. *Rubinson*, 174 N. Y. 493.

The difficulty of reaching a decision in any particular case, and the task of harmonizing the decisions is greatly increased by the fact that the leases involved exhibit infinite variety of detail in the covenants and stipulations which they contain. If the sum deposited were solely to secure the tenant's covenant to pay rent and the provision for its " forfeiture " were made dependent upon the breach of that covenant alone, and if the tenant's obligation thereunder were made to survive a termination of the lease by the landlord in any event and for any cause, it might be fairly clear that the provision, if so denominated, was one for liquidated damages. Even in this aspect, however, an element of doubt has been suggested in *Logobardi* v. *Yuliano, supra*, 33 Misc. Rep. 472, namely, to the effect that as the sum deposited is invariably considerably larger than the monthly rent, it could scarcely be contemplated by the parties that it would be liquidated damages for breach of the covenant to pay the last month's rent. The answer to that argument, however, suggested in the same case, is that the leases generally provide that the deposit is to be applied in payment of the rent of the last months of the term, and that as to those months the latter provision would take precedence over the provision for liquidated damages. It does not seem to have been decided that the mere fact that a breach during the early months of the term would in all probability be followed by very large damage, whereas a breach in the later months would necessarily result in far smaller damages — is in itself sufficient to determine the character of the deposit as a penalty. Although generally also the rule seems to have been adopted that in the absence of a surviving obligation of the

tenant after termination of the lease itself, the provision should be regarded as a penalty — since the damages in such event would be fixed and definite at the time of the breach — it is not beyond these rulings to anticipate that the parties could, by appropriate language, regardless of the survival of any covenant, fix the amount as liquidated damages *for the loss of the landlord's bargain.* That is, they could virtually agree in advance that, if he should terminate the lease for the tenant's breach, the possible loss of future rentals which he might suffer should be estimated by the parties in advance instead of reaching the same result by providing expressly that the tenant should be liable for the loss of rental as it accrues and appropriating the sum deposited as liquidated damages in anticipation of the accrual of these losses. This consideration is clearly indicated in the dissenting opinion in *Feinsot* v. *Burnstein,* 161 App. Div. 661. The point seems indeed to have been determined in *Slater* v. *Von Chorus,* 120 App. Div 16, so far at least as holding that *damages* for the loss of the landlord's bargain might be predicated upon a breach of the tenant's covenant to pay rent followed by a dispossess. There was, however, no question as between liquidated damages and penalty there involved in that case. See also *McCready* v. *Lindenborn,* 172 N. Y. 400; *Matter of Hevenor,* 144 id. 271.

As I have said above, the problem of the proper interpretation of the intent of the parties is complicated by the fact that the tenant's obligation is frequently, as in the case at bar, stipulated to survive a termination of the lease only in certain ways and for certain causes. Thus, in the case at bar, if the plaintiff-tenant was dispossessed for failure to pay rent, his future obligations would terminate, leaving only a past breach of covenants, the damages from which'

would apparently be readily and exactly ascertainable. This consideration alone would seem to require the deposit to be treated as a penalty. Again the deposit, as in the case at bar, is generally made to secure the performance of any other covenants on the part of the tenant, and the amount of so-called liquidated damage applicable is neither split nor apportioned. From this point of view, the lease might be considered like any other contract quite apart from the covenant to pay rent, and the question naturally arises, what would be the determination as to the character of the deposit if for an adequate consideration parties should thus agree to generally secure their covenants to keep a house in repair, to keep it insured, to pay taxes as they accrue and to do many other minor matters referred to in the lease at bar and usually covered by agreements of lease. One answer is suggested in *Brownold* v. *Rodbell, supra,* 130 App. Div. 371, by regarding the breach which the parties had in mind not as that of any one of several individual promises of the contractor, but as the breach of the contract as a whole. This conclusion was reached, however, in a case where the separate stipulations were closely related and were merely corollaries of the general agreement of the plaintiff to serve his employer faithfully under a contract of employment.

The contrary conclusion was arrived at in a contract of the nature of a contract of employment in *Wilhelm* v. *Eaves,* 27 Pac. Rep. (Or.) 1053, where the sum was held to be a penalty. It was regarded as liquidated damages in the case of an agreement to convey land where all the conditions were to be simultaneously performed in *Clement* v. *Cash,* 21 N. Y. 253. The same consideration was urged by Shankland, J. (the sole dissenting judge) in *Lampman* v. *Cochran, supra,* 16 N. Y. 275, 276.

In the instant and other leases, however, the covenants which I have discussed are not to be performed simultaneously, are not directly related to or dependent upon a single general act or course of employment, but really constitute separate and severable agreements differing radically in character and importance. Even if, in the case at bar, we should regard the tenant's covenant to pay so trivial a sum as nine dollars and fifty cents weekly for a time clock as being of so little significance as not to have been in the minds of the parties when the security for the performance of the tenant's covenants was deposited, and as to be disregarded on the general doctrine *de minimis non curat lex,* other covenants like that to execute all orders of government, to insure the chattels leased, not to alter the premises without the landlord's consent, etc., cannot be disposed of on any such theory.

My conclusion, therefore, is that in view of the failure of the parties to provide *expressly or in effect* that the covenant to pay rent (or to be more accurate, to indemnify the landlord for future loss of rent), should survive the termination of the lease in *any* event, and because of the fact that the deposit was made to secure the performance of all the covenants undertaken by the tenant, which, so far as they must be taken into account, vary radically in value, importance and character (as to exact measurement of loss from their breach), the ruling of the learned judge below that the provision for liquidated damages in the lease was to be construed as one for a penalty merely was correct.

The judgment should, therefore, be affirmed, with costs to respondent.

GUY and SHEARN, JJ., concur.

Judgment affirmed, with costs to respondent.