## MICHAELS v. FISHEL et al.

(Supreme Court, Appellate Division, Second Department.   May 29, 1900.)

1. LANDLORD AND TENANT—DISPOSSESSION—LEASE—CONSTRUCTION—TENANT'S LIABILITY.

Code Civ. Proc. § 2253, declares that the issuance of a warrant for the removal of a tenant from demised premises, cancels an agreement for the use thereof, and annuls relation of landlord and tenant, except as to rent due at the time the precept was issued.   A lease provided that on non-payment of rent the landlord might re-enter and relet the premises, and charge the tenant with any deficiency, and that nothing therein should be construed as a waiver of any right or remedy of the landlord for non-performance.   *Held*, that the tenant's liability under the lease did not continue if the tenant was dispossessed by summary proceedings, and hence the tenant was not thereafter liable for the difference between the rent reserved and that received on reletting the premises for the balance of the term.

2. SAME—SECURITY—RECOVERY.

Where a tenant made a deposit to secure the last two months' rent to accrue under a lease only, and he was dispossessed by summary proceedings before the expiration of the term, he was entitled to the return of the deposit, since it was made to secure the payment of specific rent which never accrued.

3. SAME.

Where a lease provided that a deposit should be held by the landlord as collateral for the last two months' rent to accrue under the lease only, and that such deposit was to be returned on fulfillment of the lease, the tenant was entitled to recover the deposit after having been dispossessed by summary proceedings before the termination of the lease by lapse of time, since such provision referred only to termination by lapse of time, operation of law, or voluntary act of the parties.

Appeal from trial term, New York county.

Action by Annie Michaels against Aaron A. Fishel and another, surviving partners, to recover money deposited as collateral security for the payment of rent.   From a judgment in favor of defendants, plaintiff appeals.   Reversed.

Argued before GOODRICH, P. J., and BARTLETT, WOODWARD, HIRSCHBERG, and JENKS, JJ.

William Bondy, for appellant.
Edward W. S. Johnston, for respondents.

HIRSCHBERG, J.   On January 12, 1892, the defendants, with one Samuel Schwartz, composing the firm of Fishel, Adler & Schwartz, as landlords, named as parties of the first part, executed a written lease of the premises No. 1149 Broadway, in the city of New York, with one Nathan Michaels, as lessee, named as party of the second part.   The lease was for seven years, less one day, from May 1, 1892, at an annual rent of $8,500, payable monthly in advance. The tenant covenanted, among other things, to pay the rent, to make all necessary repairs, and to pay the annual rent or charge for Croton water within 30 days after the same became due, in default of which payment the landlords were authorized to make the payment, and collect the amount in addition to and as part of the rent for the month next ensuing.   It was further provided that if the rent, or any part

of it, should be behind or unpaid on any day of payment, and the default should continue for 10 days, or if default should be made in any of the covenants contained in the lease on the part of the tenant, it should be lawful for the landlords to re-enter the premises, and remove all persons therefrom, and to repossess and enjoy them as in their first estate; in which event it should be lawful for them at their option to relet the premises as the agents of the tenant, to apply the rent received to the payment of the rent due by the lease, and to hold the tenant and his assigns liable for any deficiency. It was further provided that nothing contained in the lease should be construed or deemed to be a waiver on the part of the landlords of any right or remedy, in law or otherwise, which they may be or become entitled to by reason of the failure on the part of the tenant to perform any of the covenants on his part agreed to be performed. The lease also contained this provision:

"The party of the second part has deposited with the parties of the first part a transfer of a semi-tontine policy upon his life, issued by the Equitable Life Assurance Society, as collateral security for the payment of the last two months' rent to accrue under said lease only, and for no more, and for no other purpose, for which said party of the second part may substitute at any time, at its option, the amount of said two months' rent in money or any satisfactory collateral, which, if bearing interest, or if it shall be cash, shall bear interest; and said principal sum with interest, if any, shall be returned to the said party of the second part upon the fulfillment of said lease; and in case of the death of said party of the second part said parties of the first part shall forthwith collect said policy, and, after deducting therefrom the amount of two months' rent, shall forthwith pay the balance collected to the executors, administrators, or assigns of the said party of the second part."

On August 2, 1895, Michaels deposited with the firm the amount of the two months' rent—$1,416.66—in cash, receiving the life insurance policy in return, and a receipt from the firm to the effect that such sum should be held in accordance with the terms and provisions of the lease. On August 16, 1895, Michaels assigned to the plaintiff all his right, title, and interest in the lease and the deposit. Default was made in the payment of the month's rent which became due November 1, 1895, and the defendants, as surviving members of the firm, instituted summary proceedings for nonpayment of rent against the plaintiff and her assignor, in which proceedings a final order was made and a warrant issued November 20, 1895, and possession of the property restored to the defendants. The defendants paid the water rates for 1894, 1895, 1896, and 1897; the payment for the first two years named amounting to about $75. They rented the premises from December 1, 1895, until July 1, 1896, at the rate of $8,000 a year, which was the utmost rent they could get. The premises then remained vacant until May 1, 1897, when they were again let for the period remaining of the lease, viz. until May 1, 1899, at the yearly rate of $5,500, which was the highest rent the defendants could procure. The plaintiff sues to recover one-half of the deposit, being the amount deposited less the one month's rent due at the time of the dispossession; and the defendants, in addition to denying their liability to return the money, have counterclaimed for $13,333.30, deficiency in rent received, and for $156, Croton water rent paid by them.

By section 2253 of the Code of Civil Procedure it is provided that

the issuing of a warrant for the removal of a tenant from demised premises cancels the agreement under which the person removed held them, and annuls the relation of landlord and tenant. The section, however, contains a saving clause to the effect that rent may be collected which was due under the terms of the lease at the time the precept was issued, or the reasonable value of the use and occupation of the premises for any period of time prior to the issuing of the warrant in respect of which the agreement makes no special provision for the payment of rent. The effect of this section is, therefore, to destroy the lease and all rights, obligations, and liabilities created by it excepting such as had accrued at the time of the dispossession. As was said by the court in Roe v. Conway, 74 N. Y. 201, 203: "The effect of proceedings to remove a tenant for nonpayment of rent is the same as if the lease had been voluntarily canceled and given up." It is undoubtedly competent for the parties to contract with a view of preserving a liability on the part of the tenant to pay rent, or to pay a deficiency arising from a failure to rent the property after dispossession by summary proceedings; and the respondents claim that such was the contract made in this instance. I do not so construe the lease. The provision for re-entry is in accordance with the form which was in general use before the statutory procedure was adopted, and which related to the landlord's right of recovery of possession by ejectment. In Bixby v. Casino, Co., 14 Misc. Rep. 346, 35 N. Y. Supp. 677, the court held that "a reservation in a lease of a right of re-entry by the lessor on default in performance of any of the covenants assumed by the lessee is not a provision for summary proceedings, but for an action in ejectment." See, also, Kramer v. Amberg, 53 Hun, 427, 6 N. Y. Supp. 303, and Shaw v. McCarty, 2 Civ. Proc. R. 23. That the parties in this case did not contemplate the adoption of summary proceedings in the provision for re-entry is indicated by the additional proviso that nothing contained in the lease should be deemed a waiver by the defendants of the remedies given by law for any default which their tenant might make. The parties have not in express terms or by necessary implication contracted that, in case the tenant is dispossessed by summary proceedings, and the lease is thereby annulled by operation of the statute, the tenant's liability shall still continue. The right of re-entry is given upon default, and, if exercised, the landlords, at their option, may still hold the tenant for any loss in rent which may result. But the landlords expressly reserve the privilege of resorting to any other legal remedy not dependent upon the right of re-entry contained in the instrument, and with no qualification of the legal consequences which attend the adoption of such other remedies. It follows that, when the plaintiff was dispossessed, the lease terminated, all liability to pay rent thereafter ceased, and the last two months' rent never became due and owing. The plaintiff then became and was entitled to a return of the money deposited as collateral security "for the payment of the last two months' rent to accrue under said lease only, and for no more, and for no other purpose." The money was not deposited as liquidated damages, nor as security for the covenants generally, nor was it to be applied in

payment of the last two months' rent. It was merely a deposit made to secure the ultimate payment of specific rent which never in fact accrued.

In the case of Chaude v. Shepard, 122 N. Y. 397, 25 N. E. 358, the tenant deposited a sum of money with his landlord under a provision in the lease that it should be held as security for the faithful performance by the former of his covenants therein contained, and should be applied in payment of the rent of the last three months of the term, provided the lease was not sooner terminated by his failure to perform, in which last event it was declared that the deposit should be forfeited, and become the property of the landlord absolutely. The tenant was removed by summary proceedings for nonpayment of rent, and thereafter sued the landlord to recover the deposit, less the rent due at the time of the dispossession. The court held that the deposit was as security for the performance of plaintiff's covenants, and was held as indemnity for such loss as should arise from his breach; that after the re-entry the defendant was entitled to retain such sum only as would cover the damages resulting from the breach of covenants prior thereto, as there could, in the nature of the case, be no breach committed after the termination of the relation of landlord and tenant; and that the plaintiff was entitled to the surplus. The lease contained a further provision giving the defendant the right to enter in case the premises should become vacant, and to rent them as the agent of the plaintiff, accounting for the proceeds, and charging him with any deficiency; but the court held (page 403, 122 N. Y., and page 360, 25 N. E.) that this provision had "no relation to the situation produced by the termination of the plaintiff's tenancy as it was accomplished in this instance." The provision in the lease under consideration on this appeal that the deposit is only to be returned upon the fulfillment of the lease is no bar to a recovery. I regard this expression as equivalent to the completion or termination of the lease, whether by lapse of time, operation of law, or the voluntary act of the parties. In Scott v. Montells, 109 N. Y. 1, 15 N. E. 729, the same question arose, and it was so resolved. There the money was deposited under a provision in the lease that it should be held as security for the rent, and should be paid back "on full compliance with the conditions of this lease." Plaintiff having been dispossessed for nonpayment of rent, the court held that the purpose of the deposit was only to secure the rent, and not to secure compliance with the other provisions of the lease, and that the plaintiff was accordingly entitled to recover the deposit, less the amount of the rent unpaid and due at the time of the breach. The plaintiff had also broken a covenant to repair, and the court held that the resultant damages were available only by way of counterclaim, and not in diminution of the cause of action. In this case, the damages for loss of rents having been pleaded by way of counterclaim, the respondents cite Scott v. Montells as an authority in support of the judgment. But it is to be noted that in that case the breach and liability were complete at the time of the dispossession, and the question of the effect of a covenant to remain liable for rent after re-entry by virtue of the lease, where in fact

the re-entry was by virtue of the statute, was not before the court. In respect of the failure to repair, the case was like Johnson v. Oppenheim, 55 N. Y. 280, 293, where it was held that "the eviction of a tenant by summary proceedings for nonpayment of rent does not discharge him from the payment of rent or other obligations already accrued. The lease is only annulled as to future rights and liabilities, and an action for breaches of covenant already incurred is maintainable." The views herein expressed are in direct conflict with the case of Lewis v. Stafford, decided by the appellate term in the First department, and reported 24 Misc. Rep. 717, 53 N. Y. Supp. 801. In that case the provision in the lease was that, "in case of default, or any violation in any of the covenants, the landlord may resume possession of the premises, and relet the same for the remainder of the term at the best rent he can obtain, for account of the tenant, who will make good any deficiency." The court held that this provision took the contract out of the operation of section 2253 of the Code, and permitted the landlord to recover the deficiency, not as rent, but as damages for the breach. This decision was on the authority of Hall v. Gould, 13 N. Y. 127, and Baldwin v. Thibaudeau (Com. Pl.) 17 N. Y. Supp. 532. In Hall v. Gould, however, the re-entry was accomplished through an action of ejectment, and the question of the effect of the Code provision was not, and could not have been, considered. The agreement of the parties, as was said by the court (page 134), provided "for the exact case which has happened." In the case of Hackett v. Richards, 13 N. Y. 138, decided at the same term, the same conclusion was reached where re-entry was accomplished through summary proceedings, but the lease in that case provided that upon default the landlord "shall and may take possession of the same under the act entitled 'Summary proceedings to recover the possession of land in other cases' (2 Rev. St. p. 512), or shall and may re-enter the same," etc. The other case relied on by the appellate term as authority, viz. Baldwin v. Thibaudeau, was decided by the general term of the late court of common pleas. The provision in the lease appears to have been substantially identical with that in the case of Chaude v. Shepard, supra, and the decision of the general term to be to a considerable extent irreconcilable with that of the court of appeals. In each case the landlord was permitted to re-enter by operation of the contract in the event that the premises became vacant during the term; in each case the landlord was authorized to relet as agent of the tenant, who should remain liable for the deficiency; in each case summary proceedings were instituted for nonpayment of rent; and the general term held that liability for the subsequent vacant condition of the premises survived the cancellation of the lease, while the court of appeals regarded the provision for re-entry and a subsequent letting as in no wise related to a termination of the tenancy as accomplished by summary proceedings for nonpayment of rent.

The conclusion reached is that by virtue of section 2253 of the Code summary proceedings operate to cancel a lease, and to annul the contractual relations of the parties, with the single exception that liability will still exist to pay rent accrued, or for the use and

occupation of the premises prior to the issuing of the warrant; that, while an agreement may be made which will serve to take a lease out of the operation of this section, it must be an agreement having that end as its manifest object; and that the usual and formal provision for re-entry on default, which antedates in its use the adoption of summary proceedings, is not in itself a sufficient manifestation of such an intention. The judgment should be reversed.

Judgment reversed, and new trial granted; costs to abide the event. All concur, except JENKS, J., who takes no part.