## HACKETT *against* RICHARDS.

Where the lessee covenants, that if the lessor shall reënter during the term for condition broken, and shall be unable to relet the premises for a sum equal to the amount of the rent reserved, that he will pay the lessor the deficiency, and the lessor reënters and relets the premises for the residue of the term, he can only recover of the lessee the difference between the amount of the rent reserved by the original lease and the amount of all the rent realized during the term from the original lessee and the tenant to whom the premises were relet.

And where the lessor, after a reëntry and a reletting of the premises, brings an action upon such covenant before the rent reserved from the tenant to whom he relet is due, he can only recover the deficiency which exists, after allowing the amount of this rent towards the rent reserved from the original lessee.

Nor is such lessor entitled to any allowance, as against the original lessee, for expenditures made upon the premises after the reëntry, although thereby he was enabled to and did obtain more rent for the residue of the term from the tenant to whom he relet the premises.

Hackett *v.* Richards, 3 E. D. Smith 13, reversed.

THE plaintiff demised to one Abbott certain premises in the city of New-York, from the 1st day of May, 1852, until the 1st day of May, 1853, at a rent of $500, for the year payable quarterly, and the lessee was to pay the water tax. The lease contained covenants, by which Abbott, the tenant, agreed to pay the rent, the Croton water tax, to keep the premises in repair, and do sundry other things. It also contained the following covenant on the part of the lessee: " And it is further agreed, that if default shall be made in the payment of the rent, or any part thereof, or in the performance of any of the covenants herein contained, or if the said premises, or any part thereof, shall become vacant during the said term, that the said party of the first part (the plaintiff) shall and may take possession of the same under the act entitled 'summary proceedings to recover the possession of land in other cases' (2 *R. S.*, 512), or shall and may

reënter the same, and use such force for that purpose as he shall think fit, without being liable to any prosecution therefor, and that he may thereupon relet the said premises as the agent of the said party of the second part (the lessee); but in the name of the said party of the first part, applying the avails thereof, first to the payment of such expenses as he may be put to in reëntering, and then to the payment of the rent due by these presents, and the balance, if any, to pay over to the said party of the second part. And the said party of the second part hereby covenants and agrees that if the said party of the first part shall recover or take possession of the said premises as aforesaid, and shall be unable to relet the same, or obtain sufficient rent therefor to make up the amount of rent hereby reserved, that the said party of the second part shall and will pay to the said party of the first part any and all loss or difference of rent for the residue of the said term."

The defendant, by an instrument under seal, executed cotemporaneously with and attached to the lease, agreed with the plaintiff that Abbott, the tenant, would perform all the covenants on his part to be performed contained in the lease.

Abbott took possession of the premises on the 1st of May, 1852, and occupied them till in August following, when he was dispossessed by virtue of summary proceedings under the statute, instituted against him by the plaintiff for the non-payment of the quarter's rent, which became due the first of that month; and the plaintiff then took possession of the premises and leased them to Mrs. Vose, from the 1st of October, 1852, to the 1st of May, 1853, at the rent of $350. After Abbott was dispossessed, and before the commencement of this action, he paid $125, the quarter's rent due on the 1st of August. Mrs. Vose paid $50 on account of the rent she agreed to pay, on the 1st of November, and $300, the residue, on the 1st of May, 1853. The water tax for the year was assessed on the premises on the 1st day of

May, 1852 and in default of payment by Abbott, the plaintiff paid it in September following.

In December, 1852, the plaintiff commenced this action in the New-York common pleas against Richards. The complaint set out the lease to Abbott and the guarantee of performance by him, executed by the defendant, and demanded judgment for $170.90, being for one quarter's rent due on the 1st of November, $8.40 the water tax, and $37.50 damages for not repairing.

The cause was tried in June, 1853, before Judge Daly, without a jury, where the facts above stated appeared. It also appeared that the plaintiff, after he dispossessed Abbott, made repairs on the premises to the amount of $200, and that Mrs. Vose agreed to pay rent from October to May, at the rate of $600 instead of $500 per annum, in consequence of these repairs being made. The court at the trial directed judgment in favor of the plaintiff for the water tax, and the $37.50 damages and the amount of the rent for the months of August and September, at the rate of $500 per annum, being $83.32, making in all, $129.22 and costs. The defendant excepted. Judgment was entered for the amount ordered and costs, and the defendant appealed. The court at general term ordered the judgment reversed, unless the plaintiff reduced it to the amount of $85.40 with interest and costs. The judgment was reduced accordingly, and the defendant appealed therefrom to this court.

*Isaac Dayton*, for the appellant.

*R. F. Hicks*, for the respondent.

DENIO, J. If it were not for the special provision in the lease, the reëntry by the plaintiff would have put an end to the covenant of the lessee to pay rent. The parties were aware that this would be the legal consequence of a reëntry.

and they undertook to make a conventional arrangement which would place them on a different footing. This court held, in the case of *Gould* v. *Hall* (*ante* 127) that such a provision in a lease was valid and enforceable after reëntry by the lessor. The plaintiff, by the terms of this lease, was to act as the agent of the lessee in again leasing the premises, and the latter was to pay " all loss or difference of rent for the residue of the said term." As a large portion of the term was unexpired when the plaintiff reëntered, and as the premises were again let, pursuant to the arrangement, for a period covering the entire residue of the defendant's original term, it is obvious that the " loss or difference of rent" referred to would consist of the amount of the rent payable by the original lease which would remain after applying that which should be payable and which should be realized under the new lease for the remainder of the original term. If the new lease should prove unavailable to produce the rent payable by its terms, without fault on the part of the plantiff in accepting the new tenant, or in enforcing payment, the loss would undoubtedly fall on the first lessee. This results from the agreement that the plaintiff should act as the agent of the lessee. But it could not be ascertained until the end of the year whether a loss would arise from this cause or not. When, therefore, the present action was commenced, it could not be truly affirmed that the loss or difference of rent referred to in the lease, would be greater than the difference between the amount of the old rent from the time the lessee had ceased to pay, and that which was reserved by the new lease from the time it commenced to the end of the term ; and the facts which occurred after the commencement of the action show that this was the precise difference. If the plaintiff had been unwilling to run the risk of collecting the rent from the new tenant, he should have waited until that rent had fallen due and a default had occurred in paying it. By prosecuting this action pending the term, he must be taken to have assumed that the new

rent would be paid, and to have sought to recover the difference between that rent and the rent which the first lessee agreed to pay. If he was willing to take that hazard, I see no objection to his having commenced this action, as he did, at the end of the second quarter. The amount of the deficiency, which upon these principles he will be entitled to recover, is not as much as would have been recoverable under the former lease, from the time the lessee ceased to pay to the end of the second quarter; so that the defendant is not compelled to pay faster than he would have been by the terms of the primary covenants.

The plaintiff is not entitled to be allowed for the improvements which he put upon the premises before leasing them the second time. The spirit of the agreement required him to lease again the same subject which he had demised to the first lessee. If he elected to make it more valuable, it was without any authority from the lessee or his surety, the defendant. They cannot complain, as they are not prejudiced by the improvements; and if they are benefited by them, it is an advantage which the plaintiff has chosen to confer upon them without any agreement or obligation on their part to reimburse him.

I think the plaintiff was entitled to recover the Croton water rent. It was payable 1st May, 1852; and the lessee having failed to pay it, the plaintiff paid it for him, and is entitled to recover it from the surety.

But the plaintiff was permitted to recover $85.40. This is considerably more than he was entitled to upon the principles already stated. Abbott was to pay $500 as rent for the year. Of this he paid the first quarter, being $125, before this suit was commenced. The plaintiff relet the premises for $350, which sum was actually paid him. Thus he received for the use of the premises during the year $475, leaving a deficiency of only $25, which sum, with the water tax, was all he should have recovered.

The judgment should therefore be reversed and a new trial ordered.

MARVIN and HAND, JJ., also delivered opinions to the same effect.

Judgment accordingly.