ANNA MICHAELS, Respondent, *v.* AARON A. FISHEL et al., Surviving Members of the Firm of FISHEL, ADLER & SCHWARTZ, Appellants.

1. PRESUMPTION — TECHNICAL TERM — LEASE. The use of a purely technical term, especially when it is found in the midst of the quaint words of ancient leases, gives rise to the presumption that the parties used it with its strict common-law meaning, and this presumption is strengthened when the word occurs in an instrument drawn by one learned in the law.

2. LEASE — CONSTRUCTION — "RE-ENTER." The term "re-enter" in a lease reserving to the lessors the right upon default "into and upon said premises to re-enter and * * * the same to have again * * * as in their first and former estate," and upon which re-entry depends a covenant by the lessee to pay any deficiency arising on the reletting of the premises by the lessors as his agents, means only a re-entry in its technical sense as known to the common law by ejectment, and does not include the removal of the lessee by statutory summary proceedings.

3. LANDLORD AND TENANT — DEPOSIT AS SECURITY — FULFILLMENT OF LEASE. A deposit made for the security of rent alone and to be returned upon the "fulfillment" of the lease, can be retained by the lessors after re-entry by summary proceedings for default in payment of rent, only to the extent necessary to satisfy rent coming due before the precept was issued, and cannot be applied to a deficiency arising on an attempted reletting of the premises by the lessors as the lessee's agents for which the lessee covenanted to be responsible, but which was dependent by the terms of the lease upon an entry by ejectment, since the summary proceeding terminated the lease, under section 2253 of the Code of Civil Procedure, providing that the issuing of a warrant for the removal of a tenant from demised premises cancels the agreement for the use of the premises and annuls the relation of landlord and tenant; and such termination is a fulfillment thereof entitling the lessee to the return of the balance of the deposit.

*Michaels* v. *Fishel*, 51 App. Div. 274, affirmed.

(Argued December 2, 1901; decided January 14, 1902.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, made May 29, 1900, reversing a judgment in favor of defendants entered upon a verdict directed by the court and granting a new trial.

The nature of the action, and the facts, so far as material, are stated in the opinion.

*Edward W. S. Johnston* for appellants. The plaintiff's claim is subject to the equities between her assignor and the defendants. (*Pardee* v. *Steward*, 37 Hun, 259 ; *Guinzburg* v. *Claude*, 28 Mo. App. 258 ; *Tate* v. *Neary*, 52 App. Div. 78 ; *Moore* v. *Chase*, 26 Misc. Rep. 9 ; *Moore* v. *Higgins*, 5 N. Y. Supp. 895 ; *W. V. C. & P. R. Co.* v. *McIntyre*, 28 S. E. Rep. 696 ; *Lush* v. *Druse*, 4 Wend. 313 ; *Childs* v. *Clarke*, 3 Barb. Ch. 52 ; *Martin* v. *O'Connor*, 43 Barb. 514 ; *Jacques* v. *Short*, 20 Barb. 274.) The provisions of the lease for re-entry and reletting by the landlords, as agents of the tenant, upon default in payment of any monthly installment of the rent for the space of ten days, applying the rent therefor to the payment of the rent due under the lease, and holding the lessee, his executors, administrators and assigns liable for any deficiency, took the case out of the provisions of section 2253 of the Code of Civil Procedure. (1 McAdam on Landl. & Ten. [3d ed.] 411 ; *Lewis* v. *Stafford*, 24 Misc. Rep. 718 ; *Baldwin* v. *Thibadeau*, 43 N. Y. S. R. 160 ; *Longobardi* v. *Yuliano*, 33 Misc. Rep. 474 ; *Hall* v. *Gould*, 13 N. Y. 128 ; *Hackett* v. *Richards*, 13 N. Y. 138 ; *Nathan* v. *G. I. W. Co.*, 18 Misc. Rep. 374 ; *Underhill* v. *Collins*, 132 N. Y. 269 ; *James* v. *Coe*, 32 Misc. Rep. 675 ; *James* v. *Rubino*, 30 Misc. Rep. 452 ; *Morgan* v. *Smith*, 70 N. Y. 544.) Section 2253 of the Code of Civil Procedure does not and cannot in any way affect the questions arising herein. (*Johnson* v. *Oppenheim*, 55 N. Y. 280 ; *Reich* v. *Cochran*, 151 N. Y. 122 ; 74 Hun, 551 ; *Mitnacht* v. *Cocks*, 65 How. Pr. 84 ; *Russo* v. *Yuzolino*, 19 Misc. Rep. 28 ; *Dorschel* v. *Burkly*, 18 Misc. Rep. 240 ; *Cochran* v. *Reich*, 20 Misc. Rep. 623 ; *Grafton* v. *Brigham*, 70 Hun, 133 ; *Nemetty* v. *Naylor*, 100

N. Y. 563; 11 Daly, 129; *Bohn* v. *Hatch*, 133 N. Y. 64; *Blair* v. *Bartlett*, 75 N. Y. 153.) The deposit was received by the defendants, to be held in accordance with the terms and provisions of the lease, and the lease provided that the deposit, if made in cash, should be returned to the lessee only upon the fulfillment of said lease, and the lease was not fulfilled, and the plaintiff has no right of action against the defendants for the return of such deposit. (*Pardee* v. *Steward*, 37 Hun, 259; *Tate* v. *Neary*, 52 App. Div. 78; *O. C. & C. B. P. Co.* v. *S. O. Co.*, 23 Penn. Co. Ct. Rep. 154; *W. V. C. & P. R. Co.* v. *McIntyre*, 28 S. E. Rep. 696; *Lush* v. *Druse*, 4 Wend. 313; *Pardee* v. *Steward*, 37 Hun, 259; *Martin* v. *O'Connor*, 43 Barb. 514; *Guinzburg* v. *Claude*, 28 Mo. App. 258; *Moore* v. *Chase*, 26 Misc. Rep. 9; *Jacques* v. *Short*, 20 Barb. 274.)

*William Bondy* for respondent. The plaintiff having proved that the defendants instituted summary proceedings against her and her assignor, that a final order was made and a warrant issued in those proceedings, whereby she was dispossessed of the premises, is entitled to so much of the money deposited by her assignor with the defendants as collateral security for the payment of the last two months' rent to accrue under the lease only, and for no more and no other purpose, as exceeds the amount of rent which was due defendants at the time the warrant issued and the amount of the water taxes assessed upon the premises. (*Roe* v. *Conway*, 74 N. Y. 201; *Boehm* v. *Rich*, 13 Daly, 62; *Rogers* v. *Lynds*, 14 Wend. 172; *Scott* v. *Montells*, 109 N. Y. 1; *Chaude* v. *Shepard*, 122 N. Y. 397; McAdam on Landl. & Ten. [3d ed.] 962; *Kelly* v. *Miles*, 48 Hun, 6; 122 N. Y. 645; *Bernstein* v. *Heinemann*, 23 Misc. Rep. 464; *Kahn* v. *Tobias*, 16 Misc. Rep. 83; *Hawthorne* v. *Coursen*, 18 Misc. Rep. 447; *Bixby* v. *Casino Co.*, 14 Misc. Rep. 346.) A provision in a lease authorizing the lessor to re-enter and repossess himself of the demised premises upon the default on the part of the lessee in the payment of rent or in the performance of any other cove-

nant, constitutes nothing more than an agreement that in case of such default the lessor, in addition to his right of action on the covenant for a breach thereof, which would otherwise be his only right, shall also have the right to the immediate possession of the premises. (Code Civ. Pro. §§ 1504, 3343, subd. 20 ; McAdam on Landl. & Ten. [3d ed.] 628 ; *De Lancey* v. *Ganong*, 9 N. Y. 9 ; *Samson* v. *Rose*, 65 N. Y. 411 ; *Van Rensselaer* v. *Jewett*, 2 N. Y. 141 ; *Van Rensselaer* v. *Ball*, 19 N. Y. 100 ; *Van Rensselaer* v. *Snyder*, 13 N. Y. 299 ; *Bradt* v. *Church*, 110 N. Y. 537 ; *Graves* v. *Deterling*, 120 N. Y. 447 ; *Hosford* v. *Ballard*, 39 N. Y. 147 ; *Cruger* v. *McLaury*, 41 N. Y. 219 ; *Plumb* v. *Tubbs*, 41 N. Y. 442.) The lease provided that under proper circumstances it shall be lawful for the lessors, at their option, to relet the premises as the agents of the lessee and to hold the lessee liable for any deficiency. In the absence of evidence or the finding by a jury that they exercised the option and relet as agents of the lessee after they canceled the lease, they were not entitled to any offset or counterclaim, and the plaintiff should have been held entitled to recover the money deposited as security. (*Hurley* v. *Sehring*, 43 N. Y. S. R. 240 ; *Gray* v. *K. D. Co.*, 162 N. Y. 388.)

Vann, J. This is a controversy between landlord and tenant, the plaintiff representing the lessee and the defendants the lessors. By a written instrument, made in January, 1892, the lessors demised to the lessee certain premises situated upon Broadway, in the city of New York, for a term of seven years, less one day, from May 1st, 1892, at the annual rent of $8,500, payable in equal monthly payments in advance on the first day of each month. The lease provided that upon any default in the payment of rent, continuing for ten days, or in any of the covenants entered into by the lessee, it should be lawful for the lessors " into and upon the said premises and every part thereof to re-enter and remove all persons therefrom, and the same to have again, re-possess and enjoy as in their first and former estate." By an independent paragraph

it was further provided that in the event of such re-entry, it should be lawful for the lessors " at their option to re-let the premises as the agents of the lessee and to receive the rent therefor, applying the same to the payment of the rent due by these presents and holding the said lessee, his executors, administrators and assigns, liable for any deficiency."

It was further stipulated that nothing in said lease contained should be construed or deemed to be a waiver on the part of the lessors " of any right or remedy in law or otherwise which they may be or become entitled to by reason of the failure " of the lessee " to perform any of the covenants herein on his part agreed to be performed." There was a covenant by the lessee to pay the rent reserved as well as, on or before the first day of August in each year, to pay the annual charge imposed for Croton water, with the right on the part of the lessors, if such water charge should not be paid within thirty days after it became due, to pay the same " for account of the " lessee, " and collect the same in addition to and as a part of the rent for the month then next ensuing." There was a covenant by both parties that the lease was to apply to and bind their respective heirs, executors, administrators and assigns.

After various other covenants by each party, the lease closed with the statement that the lessee had deposited with the lessors a transfer of an insurance policy upon his life " as collateral security for the payment of the last two months rent to accrue under said lease only, and for no more and for no other purpose," and the lessors covenanted that the lessee might substitute therefor " the amount of said two months rent in money," which was to be returned to the lessee with interest " upon the fulfillment of said lease." On the second of August, 1895, the lessee substituted the sum of $1,416.66 in money in the place of the policy, and received from the lessors a receipt therefor, stating that the policy was reassigned to the lessee and that said sum was to be held by the lessors " in accordance with the terms and provisions of said lease."

Default having been made in the payment of the rent which became due November first, 1895, the lessors instituted summary proceedings under section 2231 of the Code of Civil Procedure, which resulted in a final order, duly made by a court of competent jurisdiction, awarding to the lessors "the delivery of the premises" in question, "by reason of the tenant's non-payment of said rent." The usual warrant was issued on the 20th of November, 1895, whereby the lessee, or the plaintiff who stood for him, was dispossessed and possession of the premises was restored to the lessors.

The lessors paid the water charges for the years 1895 to 1897 inclusive. They leased the premises for the highest sum they could obtain, to wit, $8,000 a year from December 1st, 1895, until July 1st, 1896, and for $5,500 a year from May 1st, 1897, until May 1st, 1899, when the lease, according to its terms, was to end. The rest of the time the premises were vacant. The plaintiff, as assignee of the lessee, sues to recover the sum of $708.33 besides interest, being the amount of said deposit, less the rent for one month due at the date of dispossession. The defendants deny their liability and plead as a counterclaim a deficiency in the rent covenanted to be paid, amounting to $13,333.30, together with the amount of the water charges paid by them, and interest thereon. At the trial a verdict was directed for the defendants, "upon the issues," but the judgment entered thereon was reversed by the Appellate Division and a new trial was granted. The defendants gave the usual stipulation and came here.

The lessors insist that the covenant of the lessee to pay any deficiency, and their own covenant to return the deposit "upon the fulfillment of the lease," required the direction of a verdict in their favor. The lessee, or his assignee, claims that the proceedings to dispossess, when consummated by actual dispossession, terminated the lease for all purposes as completely as if it had been surrendered by mutual consent. She founds this claim upon section 2253 of the Code of Civil Procedure, which is as follows: "The issuing of a warrant for the removal of a tenant from demised premises, cancels

the agreement for the use of the premises, if any, under which the person removed held them; and annuls accordingly the relation of landlord and tenant, except that it does not prevent a landlord from recovering, by action, any sum of money, which was, at the time when the precept was issued, payable by the terms of the agreement, as rent for the premises; or the reasonable value of the use and occupation thereof, to the time when the warrant was issued, for any period of time, with respect to which the agreement does not make any special provision for payment of rent." This statute was passed before the lease was executed, and hence becomes, in effect, a part thereof and should be read in connection therewith. Indeed, a similar statute has been in force since the year 1820, when the first law for the recovery of demised premises by summary proceedings was enacted in this state, although an English statute upon the subject was in force while we were a colony of Great Britain. (Laws 1820, chap. 194, sec. 3, amending Laws 1813, chap. 202; 2 R. S. 515, sec. 43; 11 Geo. II, sec. 19.) As the effect of the statute is to cancel the "agreement for the use of the premises" and to annul "the relation of landlord and tenant," it terminates the lease, as such, the same as if it had "been voluntarily canceled and given up." (*Roe* v. *Conway*, 74 N. Y. 201, 205; *Rogers* v. *Lynds*, 14 Wend. 172, 176.) It does not, however, terminate independent covenants, which are not a part of "the agreement for the use of the premises," although they are contained in the same instrument and are designed to furnish security to the lessors against the contingency of dispossession, and its effect upon the lease proper, according to the statute. The right to enter into engagements of this character exists at common law, and, since there is no statute to prevent, as was said in an early case, .such a contract " certainly is not an illegal agreement, nor is there anything unreasonable in the lessee agreeing to completely indemnify his lessor for any injury which may arise to him by the lessee's breach of his own agreement. By the entry for condition broken, the estate of the lessee was at an

end, and the lessor was in of his former estate. Rent, as such, could, therefore, no longer accrue to the lessor from the lessee; his liability rested only upon his covenant looking to this very event." (*Hall* v. *Gould*, 13 N. Y. 127, 134.)

In the case before us, the covenant for the payment of any deficiency by the lessee rests wholly upon the fact of re-entry by the lessors, for it is only "in such event" that they were given the right as agents of the lessee to relet and hold him for the deficiency. Does this mean only a re-entry in its technical sense as known to the common law, or does it also include the removal of the lessee by summary proceedings? This question, which is not without difficulty, as it has led to wide divergence of views in different courts, is now clearly presented to this court for the first time. (*Kramer* v. *Amberg*, 53 Hun, 427; *Baldwin* v. *Thibadeau*, 28 Abb. [N. C.] 14; *Shaw* v. *McCarty*, 2 Civ. Pro. Rep. 49; *Bixby* v. *Casino Co.*, 14 Misc. Rep. 346; *Lewis* v. *Stafford*, 24 Misc. Rep. 717; McAdam's Landlord and Tenant [3d ed.], 411, 628, 968.)

Re-entry is the resumption of possession pursuant to a right reserved when the former possession was parted with. It was a remedy given by the feudal law for non-payment of rent, but so ancient that its origin has never been traced. "If," runs the old law, "a man makes a feoffment, gift or lease reserving rent, with a condition that if the rent be behind it shall be lawful for the feoffor and his heirs to re-enter; in these cases if the rent be behind and not paid according to the deed, the feoffor or lessor may enter into the lands and hold them in his former estate, because the estate was not absolute but defeasible by the nonperformance of the conditions." (2 Rolle's Abridgment 429; Littleton, 325; 7 Bacon's Abridgment [Gwillim and Dodd's 7th ed.], 57; Gear's Landlord and Tenant, sec. 148; Taylor's Landlord and Tenant, vol. 1, sections 290, 291; Gilbert on Rents, 135; Bradby on Distress, 1.) The rigor of the rule of forfeiture was in the course of time modified by treating the condition as a covenant of indemnity, as well as by borrowing from the civil

law the remedy of distress, and making it a duty, before exercising the right of re-entry, to search for property to distrain. (4 Encyc. Laws of England, tit. Distress; 9 English Ruling Cases, tit. Distress; Woodfall's Landlord and Tenant, 310; Co. Litt. 203; Statute of Marlebridge, cap. 4; Statute of Westminster primer, cap. 16; 4 Geo. II, c. 28.)

In 1846 " distress for rent " was abolished in this state, but the remedy of re-entry still survives and is well known to the common law. (Laws 1846, ch. 274.) It can be exercised only when the right is expressly reserved in the lease, for without such reservation the remedy of the lessor under the lease and independent of the statute, is confined to an action on the covenant. The method of exercising the right is by an action of ejectment to recover possession of the demised premises. At common law the right to re-enter, except when entry can be made without force, is simply the right to maintain ejectment, and we find no statute which has changed the rule. When lessors reserve the right " into and upon the said premises to re-enter and   *   *   *   the same to have again *   *   *  as in their first and former estate," their words point directly toward re-entry by ejectment and do not even suggest statutory dispossession. The parties may have had that subject in mind when they said in another part of the lease that " nothing herein contained shall be construed or be deemed to be a waiver   *   *   *   of any right or remedy in law or otherwise," but not when they reserved the right to re-enter, which means the recovery of possession in one way only. The use of a purely technical term, especially when it is found in the midst of the quaint words of ancient leases, gives rise to the presumption that the parties used it with its strict common-law meaning. This presumption is strengthened when the technical word occurs in an instrument drawn by one learned in the law, as the lease before us obviously was. " Re-enter " was coeval with the common law in origin and it has come down to modern times with its meaning unchanged. Narrow and technical to begin with, it has so continued throughout its history and is narrow and technical to this day, although

the extreme nicety of procedure in exercising the right has been somewhat softened by statute. (Laws 1813, ch. 202, sec. 22 ; 2 R. S. 505 ; Code Civ. Pro. § 1504.) Hence, when the lessors reserved the right to re-enter and to have, repossess and enjoy the premises as in their former estate, the presumption is that they meant re-entry by ejectment, and that if they desired to reserve a more extensive right they would have said so in express language. If, for instance, they meant that the lessee should be liable for a deficiency if he was dispossessed through summary proceedings, they should have so stated, as was done in the case under consideration in *Hackett* v. *Richards* (13 N. Y. 138). The language used by the parties before us neither necessarily nor in its legal sense has that meaning, and the right of the lessors should not be so enlarged by construction as to give them the estate and the rent also. While it was within their power to agree that the lessee should continue to pay rent after the premises had been taken away from him owing to his default, still a covenant to pay, with no right to enjoy, should be clear and unambiguous as to the event which calls it into action, for, as was said by an old writer, " a tenant can make no return for a thing he has not." (7 Bacon's Abr. [7th ed.] 57.) In the provisions of the Code relating to summary proceedings the words " re-enter " and " re-entry " are not used, but " removal," " dispossession " and the like. (Sections 2231, 2265.) The former words are used, however, in regulating the procedure by ejectment for non-payment of rent. (§§ 1504–5.) So in most modern leases the covenant providing a remedy for default either refers to summary proceedings *in hæc verba*, or makes use of some comprehensive expression, such as " in case the lessee shall be dispossessed by due process of law." (*Hackett* v. *Richards, supra ; Longobardi* v. *Yuliano*, 33 Misc. Rep. 472 ; *James* v. *Rubino*, 30 Misc. Rep. 452.) The term " re-enter," as used by the parties in their lease, means, as we think, re-entry by ejectment only and not the recovery of possession by any lawful method.

The right was not to be exercised by the lessors as agents of the lessee, which would leave the parties where they were

before, but the right to relet, after entry made, was to be thus exercised, and hence was simply a method agreed upon to measure the damages for breach of the covenant.

When the plaintiff was thrown out of possession, the lease was terminated and no more rent could accrue thereunder, but the lessee was not thereby discharged from the payment of rent which had already become due. (*Johnson* v. *Oppenheim*, 55 N. Y. 280.) Since the deposit was made as security for the rent alone and was strictly limited to that object, the lessors were entitled to retain only so much thereof as would satisfy the rent which became due before "the precept was issued." The lease thus became fulfilled, so far as the payment of rent is concerned. (*Chaude* v. *Shepard*, 122 N. Y. 397; *Hinsdale* v. *White*, 6 Hill, 507; Code Civ. Pro. sec. 2253.) In no other sense did "the last two months rent" ever accrue, owing to the action of the lessors in terminating the lease, and hence the lessee, or his assignee, was entitled to the balance. The deposit was to be returned upon "the fulfillment of said lease," which, as was said by the court below, is "equivalent to the completion or termination of the lease, whether by lapse of time, operation of law or the voluntary act of the parties." The lease before the court in a case relied upon by both parties, contained a similar provision, which did not prevent the recovery of the deposit. (*Scott* v. *Montells*, 109 N. Y. 1.)

We think that the direction of a verdict in favor of the defendants by the trial judge was reversible error, and that the order of reversal by the Appellate Division should be affirmed, and judgment absolute rendered against the appellants in accordance with their stipulation, with costs in all courts.

BARTLETT, J. (dissenting). Reading all of the provisions of the lease together they amount to this, in substance: The lessee agreed that if he failed to pay the rent the lessors might re-enter premises and rent the same for his account, he to pay any deficiency existing at end of term. This contract

in no way offends against public policy, and should be sustained, if possible.

While the term "re-enter" may be given its narrow and technical meaning at common law, which is re-entry by ejectment, I favor a broader construction, to the effect that any legal remedy could be invoked by the landlords to "re-possess and enjoy" their former estate, to quote the language of the lease.

It seems a scant measure of justice to inflict upon these landlords a loss of many thousands of dollars when they hold the tenant's covenant of indemnity against it.

An ejectment suit meant years of litigation, vacant premises and great loss to either the landlords or the tenant.

Summary proceedings meant a speedy rental of the premises which would reduce the ultimate loss that was bound to occur.

The intention of the parties is clear, and it ought to control; form should give way to substance.

I vote for reversal.

GRAY, MARTIN and WERNER, JJ., concur with VANN, J.; PARKER, Ch. J., and CULLEN, J., concur with BARTLETT, J.

Ordered accordingly.