Johnston, J.
(dissenting). The lease, so far as material, provides: “ 42. For the duration of the war, this lease may be renewed at the option of the tenant for further terms of one year each upon the same terms and conditions. After the termination of the war, the tenant shall have the option to renew this lease for a period of ten years from the date of the expiration of the last renewal term upon the same terms and conditions except that the rental in such case shall be $400. per month for the first .five years and $450. per month for the last five years.
“ 43. This lease and any one year renewal term thereof may be cancelled by either party under the following circumstances:
“a) In the event that the tenant shall be unable by reason of government restrictions to conduct business in the premises substantially as at present and the parties shall be unable to agree upon new terms and conditions, the tenant shall have the right in that event, upon thirty days’ written notice to the landlord, to terminate this lease, and shall be liable for rent only for the period up to and including the date when *115 the tenant actually surrenders possession of the premises to the landlord. * * * ”
Our task is to determine whether the tenant validly exercised Ms option to renew the lease for ten years upon the removal, immediately after the actual cessation of hostilities, of the governmental restrictions mentioned in the lease. The majority holds that, despite the obvious intent of the parties that upon such removal the tenant was»to have the right to renew the lease for ten years, actually he was precluded from exercising that right until the war was ended by the ratification of a treaty of peace or by a proclamation of peace by an authority competent to make it. Such a result in this case is not only manifestly unjust, but legally unsound. Admittedly, the question is: What was the intention of the parties by the use of the phrases “ For the duration of the war ” and “ After the termination of the war,” not in the light of subsequent developments, but in April, 1943, when they executed the lease?
There are three ways generally recognized in international law whereby war may be 'terminated: (1) by actual cessation of hostilities; (2) by the conquest and subjugation of one of the contending parties by the other so that the former is reduced to impotence and submission; (3) by a mutual arrangement embodied in a treaty of peace. (Phillipson, Termination of War and Treaties of Peace, p. 3.) Examples of wars ended by cessation of hostilities may be found in Oppenheim on International Law (Vol. 2, p. 465) and Corpus Juris (Vol. 67, War, p. 429, n. 29-b). This method of termination has been recognized by the United States Department of State. (7 Moore, Digest of International Law, p. 336.) The normal and usual method of terminating war is by a formal treaty of peace.
We may assume that, at the túne the lease was entered into, the parties who executed it and their attorneys who drew it were cognizant of the several ways by which war may be terminated and familiar with the historical, events following the then most recently concluded war (the First World War), and were guided accordingly.
In the First World War actual hostilities ceased on November 11, 1918. On July 14, 1919, the State Department authorized trading between the United States and Germany. (58 Cong. Rec., Part 4, 4159.) On November 19, 1919, the Senate refused to ratify the Versailles Peace Treaty. On March 3,1921, the Congress adopted a joint resolution providing that, in the' *116 interpretation of ány provision relating to the duration or date of termination of the war in any acts of Congress, joint resolutions, or proclamations of the President contingent upon the duration or termination of the war, the date of the resolution. was to be considered as the date of the termination of the war. (41 U. S. Stat. 1359.) On July 2, 1921, the Congress adopted a joint resolution declaring that the state of war was at an end. (42 U. S. Stat. 105.) On November 11, 1921, the ratifications of the' “ Treaty of Berlin Restoring Friendly Relations ” (not a treaty of peace) between the United States and Germany were exchanged.
In view of the foregoing historical events, it is difficult to fix the precise time when the First World War ended. Eminent authority has stated: “ It would seem not improper to set July 14, 1919, as the date of the end of the war for purposes of trading between nationals of the two countries; to set March 3, 1921, as the date of the end of the war for the-purpose of applying much of America’s war-time legislation; and to set July 2, 1921, as the date of the end of the war for purposes of American municipal law and claims before the Mixed Claims Commission. But there may also be some international situations in which it would be improper to say that the war ended before November 11,1921.” (Hudson, The Duration of the War between the United States and Germany, 39 Harv. L. Rev. 1020 1045.) Obviously, the parties and their attorneys were not dealing with a situation which called for a choice of these alternatives. Nor by the use of the phrases, “ For the duration of the war ” and “ After the termination of the war ” did the parties -and their attorneys intend the end of the war by ratification of a peace treaty, because the First World War had not ended in that manner.
It also may be assumed that, at the time the lease was entered into, the parties and their attorneys knew that November 11, 1918 — the date of actual cessation of hostilities, had been regarded by many courts as the date of the termination of the First World War. (See Lefebvre v. Healy, 92 N. H. 162; State ex rel. Peter v. Listman, 157 Wash. 229; Scott v. Commissioner of Civil Service, 272 Mass. 237; Zinno v. Marsh, 36 N. Y. S. 2d 866, not officially published; United States v. Hicks, 256 F. 707.) In Newton Coal Co. v. Davis (281 Pa. 74, 85, affd. 267 U. S. 292), in construing the Lever Act (40 U. S. Stat. 276 [1917]), which empowered the President to make certain orders “ during-the war ”, it was held that the phrase just *117 quoted “ has relation solely to a state of actual war * * In England also a contract “ for the duration of the war ” was held to have contemplated a substantial continuance of active hostilities, which ended when the Armistice was renewed. “ All that remained was the framing of terms on which we should give peace. There had been a substantial cessation of active hostilities.” The ground for this determination was that “ A business sense will be given to business documents ” and “ A mercantile contract, which is usually expressed shortly, and leaves much to be understood, ought to be construed fairly and liberally for the purpose of carrying out the object of the parties.” (Ruffy-Arnell & Baumann Aviation Co. v. King, [1922] 1 K. B. 599, 613.)
It is common thought and understanding that the surrender of our enemies ended the Second World War. They surrendered on such terms as were then and later may be demanded. While technically — for purposes of international law or the interpretation of Congressional wartime legislation or military law — a state of war continues until peace is officially proclaimed, in a practical sense — that is, in the speech of the average citizen — the period between the cessation of hostilities and the signing of the treaty of peace is for negotiation and settlement of terms, and is not actual war.
The words “ For the duration of the war ” and “ After the termination of the war ” used in the lease in the case at bar were general words or expressions in common use during the recent conflict. “ ‘ Contracts are not to be interpreted by giving a strict and rigid meaning to general words or expressions without regard to the surrounding circumstances or the apparent purpose which the parties sought to accomplish.’ * * * The court should examine the entire contract and consider the relation of the parties and the circumstances under which it was executed. Particular words should be considered, not as if isolated from the context, but in the light of the obligation as a whole and the intention of the parties as manifested thereby. Form should not prevail over substance and a sensible meaning of words should be sought.” (Atwater & Co. v. Panama R. R. Co., 246 N. Y. 519, 524.)
The majority concedes that the intent of the parties was “ to provide that while the business to be carried on in the premises should be restricted by governmental regulation, the lease could be renewed from year to year, and that thereafter, when the business should be freed from such regulation, *118 the tenant might exercise his option to renew for ten years.” It is admitted that the ten-year option was exercised as soon as the business was freed from such regulation. Under these circumstances, it is difficult to understand why the, act of the tenant in carrying out the intent of, the parties should not be given efficacy.
Even if — as the majority holds — the phrases “For the duration of the war ” and “ After the termination, of the war ” are technical legal expressions, the result is the same. While it is the rule that, where purely technical legal terms (not words which also have ordinary general usage, such as in the case at bar) are used in an instrument drawn by lawyers, they will be given their technical legal meaning (Michaels v. Fishel, 169 N. Y. 381, 389), the rule is relaxed when that meaning has no relation to the intent of the parties. “ The proper legal meaning, however, is not always the meaning of the parties. Surrounding circumstances may stamp upon a contract a popular or looser meaning. • * * * To take the primary or strict meaning is to make the whole transaction futile. To take the secondary or loose meaning, is to give it efficacy and purpose. In such a situation, the genesis and aim of the transaction may rightly guide our choice * * (Utica City Nat. Bank v. Gunn, 222 N. Y. 204, 208.)
The genesis and aim of this transaction was to give the tenant the right to exercise the ten-year option when the governmental restrictions on the business to be carried on in the premises were removed. That-is exactly when the option was exercised and its exercise was timely. There is no evidence that the landlord had in mind the technical rather than the popular meaning of the phrase “ for the duration of the war.” To give the quoted phrase its technical meaning would have no relation to the purposes of the lease. “It is easier to give a new shade of meaning to a word than to give no meaning to a whole transaction.” (Utica City Nat. Bank v. Gunn, supra, p. 209.) To adopt the view of the majority would be to put this tenant at the mercy of the landlord, for no matter which of the alternatives for the termination of the war the tenant used for the exercise of his ten-year option (whether cessation of hostilities, ratification of a peace treaty, presidential proclamation, or congressional resolution), the landlord always could argue that that was not the alternative intended. Such a result, if possible, is to be avoided. It may be avoided if a meaning be given to the phrases in dispute *119 which, as a matter of historical fact, contemplated that alternative meaning which was contemporaneous with the removal of the governmental restrictions the parties had in mind.
The foregoing views are confirmed by the determination of this court in Matter of Jones v. Schneer (270 App. Div. 1027). That case also involved garage premises which had been leased for a term commencing July 1, 1941, and ending June 30, 1946, at a monthly rental of $200 from July 1, 1943. On July 21, 1942, the lease was assigned to the defendant. The instrument by which the landlords consented to the assignment, provided that the rent was to be $100 a month “ for the duration of the war.” The only proof bearing on the intent of the parties in using the phraseFor the duration of the war,” was the testimony of one of the landlords that, when defendant asked the landlords to consent to the assignment, he told them that gasoline was being rationed and he could not carry on the business unless he obtained a reduction in rent. In a summary proceeding to obtain possession of the premises, the landlords sought to recover rent from September 1, 1945, to January 31, 1946, at $200 a month, as stipulated in the lease, instead of $100 a month, as provided in the instrument consenting to the assignment on the theory that the war had ended by Japan’s surrender on August 14, 1945. An order granting judgment to the landlords, as prayed for in the petition, was affirmed by the County Court. The order of the County Court was affirmed by this court, which held that by the phrase “ for the duration of the war,” the parties intended termination of the war on the cessation of hostilities.
In Matter of Jones v. Schneer (supra), and in the case at bar the parties were contracting with reference to governmental restrictions. In the former, evidence as to that intent appeared from the conversation preceding the execution of the instrument consenting to modification. In the case at bar that intent appears from the -lease itself. The only difference is that in Matter of Jones v. Schneer (supra) the instrument was drawn by laymen, whereas in the case at bar it was prepared by attorneys. It is not apparent why that should lead to a conclusion contrary to our former decision, which was followed in a well-reasoned opinion in Tuch Foundation v. Hazelcorn (187 Misc. 954, affd. 188 Misc. 1046 [App. Term, 2d Dept.]).
While I agree with the Appellate Term that the Municipal Court erred in deciding that the option exercised by the tenant *120 was effectual for a one year renewal of the lease, I hold that the tenant validly exercised his option to renew the lease for ten years. Hence, the determination of the Appellate Term should he modified on the law by decreasing the award to the landlord from $460, which that court fixed as the emergency rent, to $400, the rent stipulated to be paid for the month involved in this proceeding. As so modified, the order of the Appellate Term should he affirmed.
Carswell, Acting P. J., Adel and Sneed, JJ,, concur with Nolan, J.; Johnston, J., dissents and votes to modify the order on the law by decreasing the award to the landlord from $460, which the court fixed as emergency rent, to $400, the rent stipulated to be paid for the month involved in this proceeding, and, as thus modified, to affirm the order, with opinion.
Order affirmed, with costs. [See post, p. 909.]