OPINION OF THE COURT
Scott Fairgrieve, J.
Background
Defendants CLDC Inc. and Cheryl LaRocca move for summary judgment, dismissing plaintiff’s complaint. Plaintiff cross-moves for summary judgment against defendants.
The central issue in this case is whether the surrender of possession of the premises by express agreement terminated the defendant tenant CLDC Inc.’s liability under the lease, and the defendant guarantors’ obligations pursuant to the guaranty.
The verified complaint, dated December 5, 2015, alleges that plaintiff landlord and defendant CLDC entered into a lease for the premises located at 5477-5515 Merrick Road, Massapequa, New York, for the sum of $1,800 per month. Defendant tenant is also claimed to be liable for common area maintenance (CAM) charges of $50 per month, as well as tax escalations and legal fees in the event of a default.
Paragraph sixth of the complaint claims that defendants Dina Cody and Cheryl LaRocca were the principals and officers of CLDC. Both Dina Cody and Cheryl LaRocca executed a personal guaranty by payment and performance, “whereby they agreed to be jointly and severally liable for the obligations of Defendant CLDC, as provided for under the terms of the Lease.”
The verified complaint alleges that defendant CLDC failed to pay rent for January through July 2015, at the rate of $1,850 (including the CAM), plus a 5% late charge of $92.50, for a total monthly sum of $1,942.50. Also, defendants are said to owe real estate taxes of $533.95 and legal fees of $750. The arrears claimed total $14,908.15.
Paragraph eighth of the verified complaint states: “That in February, 2015, Defendant CLDC, surrendered possession of the premises, but notwithstanding remained liable for rent, and additional charges as they accrued until such time as LANE was able to release the premises.”
*566 Paragraph ninth of the verified complaint states that plaintiff relet the premises as of August 1, 2015.
The verified answer, dated March 8, 2016, denies that defendants are liable for the rent and additional rent. The verified answer admits the following:
1. The parties entered into a lease on or about July 10, 2014.
2. Dina Cody and Cheryl LaRocca were the sole shareholders and officers of defendant CLDC.
3. Defendant CLDC surrendered the premises on February 3, 2015.
As an affirmative defense, defendants allege the following: “On or about February 3, 2013, Plaintiff and Defendant CLDC, Inc. entered into a Surrender Agreement and therefore, each of the answering Defendants herein were released from any obligation under the Lease Agreement and/or alleged Guaranty.”
Motion for Summary Judgment
Cheryl LaRocca submits her affidavit, sworn to on July 2, 2016. Therein, she states that she and Dina Cody are 50% shareholders of CLDC Inc. CLDC Inc. rented store No. 6 located at 5477-5515 Merrick Road, Massapequa. Dina Cody and Cheryl LaRocca executed the “Guaranty” which purported to be a personal guaranty.
Cheryl LaRocca states in her affidavit that a dispute arose between her and Dina Cody which caused Cheryl LaRocca to meet with Mr. Lane of plaintiff to cancel the lease in a written agreement (defendants’ exhibit C) which reads as follows: “I hereby receive two keys to the premises located at 5497 Merrick Road in massapequa, NY 11758 given by CLDC, INC. DBA Piece of Perfection to Steve Lane of Lane Realty, Inc. On this day February 3rd, 2015. CLDC is hereby surrendering the premises.”
The five-year lease between plaintiff and defendant CLDC Inc. is reproduced as defendants’ exhibit A. Rider paragraph 57 (b) to the lease provides for the tenant’s obligation to pay rent, as follows:
“(b) If Tenant defaults in fulfilling any condition or covenant of this Lease requiring the payment of rent, additional rent, maintenance or other charges, then upon Landlord serving a written five days’ notice upon Tenant specifying the nature of said *567 default and upon the expiration of said five (5) days, if Tenant shall have failed to comply with or remove such default, then Landlord may serve a written three (3) days’ notice of cancellation of this Lease upon Tenant, and upon the expiration of said three (3) days, this Lease and the term there under shall end and expire as fully and completely as if the expiration of such three (3) days period were the day herein definitely fixed for the end and expiration of this Lease and the term there under and Tenant shall then quit and surrender the demised premises to Landlord but Tenant shall remain liable as provided in this Lease, It being the intention of the parties hereto to create hereby a conditional limitation with respect to the timely payment of rent.”
Article 18 of the lease provides as follows:
“In the case of any such default, re-entry, expiration and/or dispossess by summary proceedings or otherwise, (a) the rent, and additional rent, shall become due thereupon and be paid up to the time of such re-entry, dispossess and/or expiration, (b) Owner may re-let the demised premises or any part or parts thereof, either in the name of Owner or otherwise, for a term or terms, which may at Owner’s option be less than or exceed the period which would otherwise have constituted the balance of the term of this lease, and may grant concessions or free rent or charge a higher rental than that in this lease, and/or (c) Tenant or the legal representatives of Tenant shall also pay Owner, as liquidated damages, for the failure of Tenant to observe and perform said Tenant’s covenants herein contained, any deficiency between the rent hereby reserved and/or covenanted to be paid and the net amount, if any, of the rents collected on account of the subsequent lease or leases of the demised premises for each month of the period which would otherwise have constituted the balance of the term of this lease. The failure of Owner to re-let the demised premises or any part or parts thereof shall not release or affect Tenant’s liability for damages. In computing such liquidated damages there shall be added to the said deficiency such expenses as Owner may incur in connection *568 with re-letting, such as legal expenses, reasonable attorney’s fees, brokerage, advertising and for keeping the demised premises in good order, or for preparing the same for re-letting. Any such liquidated damages shall be paid in monthly installments by Tenant on the rent day specified in this lease. Owner, in putting the demised premises in good order or preparing the same for re-rental may, at Owner’s option, make such alterations, repairs, replacements, and/or decorations in the demised premises as Owner, in Owner’s sole judgment, considers advisable and necessary for the purpose of re-letting the demised premises, and the making of such alterations, repairs, replacements, and/or decorations shall not operate or be construed to release Tenant from liability. Owner shall in no event be liable, in any way whatsoever, for failure to re-let the demised premises, or in the event that the demised premises are re-let, for failure to collect the rent thereof under such re-letting, and in no event shall Tenant be entitled to receive any excess, if any, of such net rent collected over the sums payable by Tenant to Owner hereunder. In the event of a breach or threatened breach by Tenant of any of the covenants or provisions hereof, Owner shall have the right to injunction and the right to invoke any remedy allowed at law or in equity as if re-entry, summary proceedings and other remedies were not herein provided for. Mention in this lease of any particular remedy, shall not preclude Owner from any other remedy, in law or in equity. Tenant hereby expressly waives any and all rights of redemption granted by or under any present or future laws.”
Defendants’ exhibit B is the guaranty dated July 10, 2014, executed by Dina Cody and Cheryl LaRocca. Both Dina Cody and Cheryl LaRocca agreed to the following liability for rent and additional rent:
“In consideration of, and as an inducement for the issuance of a Lease, from LANE NY REALTY HOLDING, LLC (hereinafter ‘Landlord’) to CLDC, Inc., (hereinafter ‘Tenant’) dated as of June—, 2014, in further consideration of the sum of TEN DOLLARS ($10.00) and other good and valuable consideration, the receipt and sufficiency of which are *569 hereby acknowledged, the undersigned, Cheryl La-Rocca 82 Arlyn Drive East, Massapequa, NY, 11758 and Dina Marie Cody, 123 Meadowbrook Road, Merrick, NY 11566, as Guarantors (Collectively ‘Guarantors’), unconditionally guaranties to Landlord, its successors and assigns, the full and prompt payment of said Lease and hereby covenants and agrees to and with Landlord that if default shall at any time be made by Tenant or its successors or assigns, in the payment of the Rent or Additional Rent, or in the full and faithful performance of the terms and conditions of the Lease, Guarantor, shall and will forthwith pay such Lease, including without limitation, reasonable attorney’s fees and disbursements incurred by Landlord or caused by or in any way related to any such default and/or the enforcement of this Guaranty. Notwithstanding anything to the contrary contained herein, Guarantors’ liability shall be limited to the payment of the Rent and Additional Rent, including without limitation, reasonable attorney’s fees and disbursements incurred by Landlord up to and including six months (6) from the date of delivery of peaceful possession of the demised premises.
“Notwithstanding the foregoing, should Tenant elect to terminate this lease before its expiration, Landlord agrees to dispense with the Guaranty provided that Tenant provide Landlord with 6 months written notice prior to termination and not otherwise be in default of any term, condition or covenant, and shall have completely performed all of the following on or before six (6) months from the Notice:
“(i) Vacated and surrendered the Premises to the Landlord, in writing reasonably acceptable to Landlord, in the condition the Premises is required to be in pursuant to the terms of the Lease, and
“(ii) Delivered the keys to the Premises to the Landlord in broom clean condition, and
“(in) Paid the Landlord timely all Rent and Additional Rent due for the six (6) month period subsequent to the Notice of Termination.
“(iv) Tenant must allow landlord access to show/list the store front for purposes of re-leasing the premises.
*570 “Should tenant fail to provide Landlord with 6 month written notice, Tenant shall be personally liable to Landlord in accordance with the lease and this limited guaranty will not apply.”
As previously noted, defendants’ exhibit C is the surrender of the premises dated February 3, 2015, which has already been quoted herein.
Defendants’ exhibits D and E are the verified complaint and verified answer.
Cross Motion for Summary Judgment
The affidavit of Steven Lane, sworn to on July 25, 2016, is submitted in support of plaintiff’s cross motion for summary judgment. He states that the lease was executed on or about July 10, 2014, with rent to be paid monthly in the sum of $1,800. Also, Mr. Lane avers that on or about July 10, 2014, Dina Cody and Cheryl LaRocca signed a guaranty of the lease. The guaranty provided that Dina Cody and Cheryl LaRocca could escape liability on the guaranty by the defendant CLDC Inc. providing six months’ notice of termination and the rent being paid for the six months subsequent to the notice of termination. Mr. Lane states that no notice of termination was given and that the rent was in default starting in January 2015. At the time of surrender of the premises on February 3, 2015, rent was owed for January and February of 2015.
Mr. Lane writes that defendant was required to “legalize all existing conditions for the intended use of the premises as provided herein.” Mr. Lane contends that CLDC Inc. failed to legalize the kitchen and the bathroom and thus were in default under the terms of the lease.
Mr. Lane asserts in his affidavit that even though plaintiff accepted possession of the premises, there was no agreement to relieve the defendants from liability under the lease or personal guaranty: “Although Plaintiff accepted possession of the premises and acknowledged receipt of the keys, there was no agreement in writing or otherwise to release the Tenant from its obligations under the Lease or to release Dina Cody or Cheryl LaRocca from their obligations under the joint personal Guaranty.”
Plaintiff contends that due demand was made upon the guarantors for the rent of March, April, May, June and July of 2015. No payment was received.
*571 Plaintiff was able to obtain a new tenant as of August 1, 2015. Plaintiff asserts that it had to provide a two-month concession in order to place the tenant.
Cheryl LaRocca submits her further affidavit, sworn to August 28, 2016. She states the following occurred when she met with Mr. Lane on February 3, 2015:
“As more fully set forth in my initial Affidavit in the above-entitled matter, on February 3, 2015, your deponent met with Steven Lane, the principal of plaintiff, with regard to terminating the above Lease.
“At the time that I met with Mr. Lane, I relinquished possession of the premises along with the keys to the premises to him and presented him with a receipt. At that time, he specifically requested that the following words be inserted on the receipt: “CLDC is hereby surrendering the premises.
“Thereafter, both your deponent and Mr. Lane initialed the change as well as signed the bottom of the document.”
Cheryl LaRocca contends that the above circumstances relieve her from liability under the personal guaranty either by expressed agreement or by operation of law.
Decision
The question presented is whether the defendants are liable for the rent arrears pursuant to the lease and personal guaranty.
In 2 Robert F. Dolan, Rasch’s Landlord and Tenant—Summary Proceedings § 26:1, “Surrender defined” (4th ed), Hon. Robert F. Dolan writes that there is legal distinction between a surrender of possession and surrender of a leasehold estate:
“A distinction must be made between a surrender of possession and a surrender of a leasehold estate. A mere yielding up or surrender of possession by a tenant in and of itself does not terminate a lease. This is merely an abandonment of possession. ‘A surrender of possession,’ said the Court of Appeals, ‘is not always a surrender of a “lease” or of the “estate” thereby created ... A surrender of possession, if accepted, is evidence indeed from which a surrender of the estate may be inferred, yet it will not have that effect if the parties otherwise agree.’ *572 Accordingly, a surrender can terminate a lease only by an agreement of the landlord and his tenant, evidenced either by an express agreement, or by an agreement implied by law from the acts of the parties inconsistent with the terms of the lease or the relation of landlord and tenant. Therefore, an acceptance by a landlord of his tenant’s surrender or yielding up of possession is essential to terminate a lease.”
Judge Dolan emphasizes that there must be a specific agreement to terminate the lease:
“§ 26:2. Express surrender; Defined
“There are two kinds of surrender of a lease. One is an express surrender. The other is a surrender by act or operation of law. An express surrender of a lease is one voluntarily made by the express mutual agreement of the parties to a lease, and expressly manifests an intention to reconvey the leasehold estate to the landlord. But, it is essential that there be a mutual agreement between the landlord and tenant that the lease terminate” (2 Robert F. Dolan, Rasch’s Landlord and Tenant—Summary Proceedings § 26:2 [4th ed]).
In Kottler v New York Bargain House, Inc. (242 NY 28 [1926]), Judge Cardozo discussed the distinction between surrender of possession and termination of liability under the lease. There must be an express provision to terminate the liability of the tenant under the lease for the deficiency of rent after surrender of possession:
“The question remains whether by force of agreement between the landlord and the bankruptcy receiver, the term had been ended before the relet-ting was attempted, with the result that what was done thereafter was of no effect against the tenant. There are provisions in that agreement which read by themselves and without reference to the context would give support to that conclusion. The receiver agrees to surrender possession of the premises to the landlord, and the landlord accepts the surrender so made by the receiver. But a surrender of ‘possession’ is not always a surrender of a ‘lease’ or of the ‘estate’ thereby created (2 Tiffany Landlord & Tenant, p. 1307). A surrender of possession, if accepted, is evidence indeed from which a surrender of the estate may be inferred, yet it will not have *573 that effect if the parties otherwise agree (Jones v. Rushmore, 67 N. J. L. 157). We think it plain from other provisions of the agreement between the landlord and the receiver that they did otherwise agree. What they were bargaining for was a surrender of possession, and no more. The landlord expressly reserves the right to prove against the bankrupt for any deficiency in rent that may be incurred by reletting as his agent. This is coupled with a provision that nothing contained in the agreement ‘shall be construed in prejudice or relinquishment’ of the landlord’s rights against the tenant or the tenant’s assignors. These provisions would be frustrated by a holding that the lease was at an end. All that the receiver did was to evidence an election that the lease was not accepted as an asset for the benefit of creditors (Dushane v. Beall, 161 U. S. 513). The election did not divest the bankrupt’s title to the estate for years, which remained where it had been before. So, indeed, the defendant itself interpreted the transaction. It made an assignment of the lease a few days later, and thereby indicated its understanding that the lease was still in force. The landlord, it is true, was in possession, but not because the estate was at an end. He was in possession because the premises had become vacant, and the tenant had consented that he should have power to relet” (242 NY at 35-36).
A case quite instructive on the issues before this court is Building Supervision Corp. v Skolinsky (50 Misc 2d 375 [Civ Ct, NY County 1966]). The court granted judgment to the plaintiff for rent arrears. In doing so, the court noted that the survival clause in the lease permitted the landlord to reenter and re-rent—without terminating tenant’s liability, albeit such liability would be for damages only. The court stated that tenant’s liability can only be terminated by a landlord’s actions, inconsistent with the landlord-tenant relationship and the survival clause:
“Absent express agreement, surrender and acceptance — terminating tenant’s liability — can only be founded upon some unequivocal action by the landlord inconsistent with (1) the landlord-tenant relationship, and (2) the survival clauses in the lease continuing the liability of the tenant *574 despite re-entry by the landlord and renting to others. (Hermitage Co. v. Levine, 248 N. Y. 333; Michaels v. Fishel, 169 N. Y. 381; Saracena v. Preisler, 180 App. Div. 348; Brill v. Friedhoff, 192 App. Div. 802; Grigsby v. Ruland, 210 App. Div. 640.) Tenants having vacated, the survival clauses in this lease permitted landlord to re-enter and re-rent — without terminating tenant’s liability, albeit such liability would be for damages only. (Hermitage Co. v. Levine, supra; Hines v. Bisgeier, 244 App. Div. 354; Lenco, Inc. v. Hirschfeld, 247 N. Y. 44; Kottler v. New York Bargain House, 242 N. Y. 28.)” (50 Misc 2d at 377.)
Likewise, the Court in Gallery at Fulton St., LLC v Wendnew LLC (30 AD3d 221 [1st Dept 2006]) held that even though the termination ended the landlord-tenant relationship, tenant’s liability under the lease continued:
“Moreover, although the termination ends the landlord-tenant relationship, the parties clearly contracted to make the defaulting tenant liable for rent after such termination (cf. Holy Props, v Cole Prods., 87 NY2d 130, 134 [1995] [‘Although an eviction terminates the landlord-tenant relationship, the parties to a lease are not foreclosed from contracting as they please. If the lease provides that the tenant shall be liable for rent after eviction, the provision is enforceable’ (citations omitted)]; International Publs, v Matchabelli, 260 NY 451, 453-454 [1933])” (30 AD3d at 222).
In the case at bar, rider paragraph 57 states that the lease will end upon the default in paying rent (conditional limitation) and the tenant shall surrender the premises. However, the paragraph explicitly states that the “Tenant shall remain liable as provided in this Lease.” Paragraph 18 provides for tenant’s continuing liability for the rent. Landlord is permitted to give rent concessions in order to obtain another tenant.
The guaranty here provides that if the tenant terminates the lease before its expiration, Dina Cody and Cheryl LaRocca would be released from liability as guarantors, provided that six months’ notice was given and all rent and additional rent for the six-month period subsequent to the termination notice was paid.
The guaranty also provides that the tenant shall remain liable for failure to give six months’ written notice and the limited guaranty would not apply.
*575 Based upon the above, this court rules that the surrender of possession of the premises did not relieve the tenant from liability under the lease or the guarantors from liability under the guaranty.
Similarly, the Court in Hyams v Kit Supply Corp. (251 AD2d 15 [1st Dept 1998]) held that the letter discontinuing a summary proceeding believed to be without merit because it was commenced after the tenant delivered keys to the landlord and left the premises, could not be construed as the landlord abandoning its right to collect rent under the lease or to relet and collect the difference between the old lease and new lease rent amounts.
Chestnut Realty Corp. v Kaminsky (132 AD3d 797 [2d Dept 2015]) does not dictate a contrary result. The Court of Appeals stated in Riverside Research Inst. v KMGA, Inc. (68 NY2d 689, 692 [1986]): “As distinguished from an express surrender, a surrender by operation of law is inferred from the conduct of the parties (Bedford v Terhune, 30 NY 453, 463; Rasch, op. cit. § 859).”
The Chestnut Court reiterated:
“ ‘A surrender by operation of law occurs when the parties to a lease both do some act so inconsistent with the landlord-tenant relationship that it indicates their intent to deem the lease terminated’ (Riverside Research Inst. v KMGA, Inc., 68 NY2d 689, 691-692 [1986]; see Bay Plaza Estates v New York Univ., 257 AD2d 472, 473 [1999]). A surrender by operation of law is to be inferred from the parties’ conduct (see Riverside Research Inst. v KMGA, Inc., 68 NY2d at 692; Matter of Wasserman v Ewing, 270 AD2d 427, 428 [2000]). Whether a surrender by operation of law has occurred is a determination to be made on the facts (see Riverside Research Inst. v KMGA, Inc., 68 NY2d at 692; Brock Enters, v Dunham’s Bay Boat Co., 292 AD2d 681, 682 [2002])” (132 AD3d at 797).
In the case at bar, the written agreement allows for surrender of possession but does not extinguish plaintiff’s contractual rights under the lease and guaranty. There is no evidence that plaintiff agreed to abandon its contractual right to collect the arrears from the tenant pursuant to the lease and the guarantors pursuant to the guaranty.
It is clear in the instant case that there was no express agreement whereby plaintiff waived its contractual rights against *576 the defendants. Nor is there conduct supporting a waiver of contractual rights by operation of law. As such, plaintiff is entitled to summary judgment.
Conclusion
Defendants’ motion for summary judgment is denied. Plaintiff’s cross motion for summary judgment is granted.